Yazoo & M. V. R. R. Co. v. Craig et al.

[79 South. 102, Division B.]

1. CARRIERS. *Shipments. Liability in general.*
    A common carrier is responsible for all losses occasioned except those occasioned by the act of God or the public enemy, except as it may stipulate in its contract against loss or liability at common law.

2. PLEADING. *Construing against pleader.*
    A plea is construed most strongly against the pleader, and the court is bound to assume that the facts are pleaded as strongly in the plea as they could be under the facts governing the transaction.

3. CARRIERS. *Destruction of goods while side tracked. Liability.*
Under a bill of lading relieving a carrier from liability for loss "by accident or delays from unavoidable causes." Unusual and unexpected congestion at the place of destination due to the fact that teamster at the point of destination who were accustomed to handle shipments, were occupied in removing freight already there, did not exonerate the initial carrier from liability for shipment destroyed by fire while side tracked nine miles from destination upon the tracks of a connecting carrier.

4. CARRIERS. *Loss of line of connecting carrier. Initial carrier's liability.*
Under the Carmack Amendment (U. S. Comp. St. 1916, sections 8604a, 8604aa) whenever the carrier voluntarily accepts goods for shipment to a point on another line in another state, it is conclusively treated, as having made a through contract. It thereby elected to treat the connecting carriers as its agents, for all purposes of transportation and delivery. Such a case must be treated as though the point of destination was on its own line, and is to be governed by the same rules of pleading, practice, and presumption as would have applied if the shipment had been between stations in different states, but both on the company's railroad.

APPEAL from the circuit court of Warren county.

HON. E. L. BRIEN, Judge.

Suit by Philip S. Craig and others, executors of W. C. Craig, on behalf of W. C. Craig & Co., against the Yazoo & Mississippi Valley Railroad Company. From a judgment for plaintiffs, defendant appeals.

The facts are fully stated in the opinion of the court.

*Chas. N. Burch, H. D. Minor* and *Robt. B. Mayes,* for appellant.

Excluding from consideration the Carmack amendment and independently of it, it is clear that the plaintiff is not entitled to recover under the decisions of this court or the decisions of the United States supreme court. The federal and Mississippi decisions are in accord with what is termed the American rule; that is,

that a common carrier accepting goods for transportation to a point beyond its own line, is not liable for loss or damages occurring beyond its own line unless it expressly or impliedly contracts to become liable for loss or damage beyond its own line. Of course, the bill of lading in this case specifically provides that the defendant shall not be liable for loss or damage occurring beyond its own line. Among the Mississippi decisions are *Crawford* v. *Southern Railroad Association*, 51 Miss. 222; *Mobile & Ohio R. R. Co.* v. *Tupelo Furniture Manufacturing Co.*, 76 Miss. 35; *I. C. R. R.* v. *Kerr*, 68 Miss. 14.

The English rule is that the carrier accepting goods for transportation to a point beyond its own line, thereby (in the absence of any express contract to the contrary), assumes responsibility for loss or damage on connecting lines. Hutchinson on Carriers, sections 228, 231. See also statements of the American and English rules in 6 American & English Encyclopedia of Law (2 Ed.), page 611. Among the United States supreme court decisions, declaring and upholding the American rule are *Michigan Central Railroad Co.* v. *Mineral Springs Manufacturing Company*, 16 Wall. 324; *Ogdensburg & L. C. R.* v. *Pratt*, 22 Wall. 129; *Michigan Central Railroad Co.* v. *Myrick*, 107 U. S. 102; *Pa. Railroad* v. *Jones*, 155 U. S. 339.

It will be seen, therefore, that it has long been the rule of the United States supreme court, and of the supreme court of Mississippi that an initial carrier is not responsible for loss or damages to freight occurring on some conecting line unless the carrier expressly or impliedly contracted to be so responsible. The rule of the common law made the carrier liable for any loss or damage occurring on its line, except such as were due to the act of God or the public enemy, but it has long been the rule of the United States supreme court and of this court that as to loss or damage on its own line, the carrier might limit its liability to the

damage occurring through the negligence of itself or its servants. *Adams Express Company* v. *Croninger,* 226 U. S. 509; *Chicago, etc., Ry. Co.* v. *Abels,* 60 Miss. 1022.

Carmack Amendment.    The effect of the Carmack Amendment has been authoritatively announced by the supreme court of the United States several times, but nowhere more clearly than by Judge LURTON in the case of *Adams Express Company* v. *Croninger,* 226 U. S. 491. In that case Judge LURTON stated the rule of liability previous to the Carmack Amendment as follows:

"Prior to that amendment, the rule of carriers' liability, for an interstate shipment of property, as enforced in both federal and state courts, was either that of the general common law, as declared by this court and enforced in the federal courts throughout the United States (*Hart* v. *Pennsylvania R. Co.,* 112 U. S. 331, 28 L. Ed. 717, 5 Sup. Ct. Rep. 151), or that determined by the supposed public policy of a particular state (*Pennsylvania R. Co.* v. *Hughes,* 191 U S. 477, 48 L. Ed. 268, 24 Sup. Ct. Rep. 132), or that prescribed by statute law of a particular state (*Chicago M. & St. P. R. Co.* v. *Solan,* 169 U. S. 133, 42, L. Ed. 688, 18 Sup. Ct. Rep. 289). *Northern P. R. Co.* v. *Washington,* 222 U. S. 370, 56 L. Ed. 237, 32 Sup. Ct. Rep. 160; *Southern R. Co.* v. *Reid,* 222 U. S. 424, 56 L. Ed. 257, 32 Sup. Ct. Rep. 140; Second Employer's Liability Cases: *Mondou* v. *New York, N. H. & H. R. Co.,* 223 U. S. 1, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44, 32 Sup. Ct. Rep. 169; *Greenwald* v. *Barrett,* 199 N. Y. 170, 175, 35 L. R. A. (N. S.) 971, 92 N. E. 218; *Bernard* v. *Adams Exp. Co.,* 205 Mass. 254, 259, 28 L. R. A. (N. S.) 293, 91 N. E. 324, 18 Ann. Cas. 351.

In a very recent case the Croninger decision by Judge LURTON was reviewed by the supreme court of the United States and the doctrine of the Croninger case further announced as follows:

"Counsel concede liability of a common carrier under the long recognized common-law rule not only for the negligence, but also as an insurer, and that unless the Carmack amendment has changed this rule, the railway is responsible for damage, not exceeding specified value. But they insist that in *Adams Exp. Co.* v. *Croninger*, 226 U. S. 491, 57 L. Ed. 314, 55 L. R. A. (N. S.) 257, 33 Sup. Ct. Rep. 148, we held this amendment restricts a carrier's liability to loss, caused by it, and consequently, they say the trial court erred when it charged: "In this case the carrier is held to the highest degree of care for the safe transportation of the animals.'

Construing the Carmack Amendment, we said through Mr. Justice LURTON, in the case cited (pp. 506, 507): "The liability thus imposed is limited to any loss, injury or damage caused by it or a succeeding carrier to whom the property may be delivered, 'and plainly implies a liability for some default in its common-law duty as a common carrier.' Properly understood, neither this nor any other of our opinions holds that this amendment has changed the common-law doctrine theretofore approved by us in respect of a carrier's liability for loss occurring on its own line.

"The state courts, treating the bill of lading as properly in evidence, undertook to determine its validity and effect. We need not, therefore, consider the mooted question of pleading. The shipment being interstate, rights and liabilities of the parties depend upon acts of Congress, the bill of lading, and common-law rules as accepted and applied in federal tribunals." *C. N. O. & T. P. R. Co.* v. *Rankin*, 241 U. S. 323, 326.

Applying these cases to the instant case we find the following: Since the Carmack Amendment, the initial carrier is only responsible for loss or damage caused by it or caused by a connecting carrier. "Caused by it or by any common carrier, railroad or transportation company to which such property may be delivered or

over whose line or lines such property may pass, means caused by some negligent act of the initial carrier or connecting carrier, whether the negligence be an act of omission or commission. As stated by the supreme court of Massachusetts in *Bernard* v. *Adams Express Company. Adams Express Co.* v. *Croninger,* 226 U. S. 491, 33 Sup. Ct. 148, 57, L. Ed. 314, 44 L. R. A. (N. S.) 257. In discussing the Carmack Amendment, it is said in 4 Ruling Case Law, Title ''Carriers,'' sec. 360, as follows: The only liability imposed by the statute beyond that which existed at common law is this responsibility for the undertaking of other carriers into whose possession the property may come. The liability is only for loss, damage, or injury caused by the carrier, which broadly interpreted, includes that resulting from neglect as well as that due to a positive act. Hence it does not include the liability of an insurer against loss for which the common carrier is not culpably chargeable.''

It is apparent, therefore, that from these decisions independently of the stipulation of the bill of lading, the defendant cannot be held liable for the loss of cotton in this case, such loss resulting from a fire not caused by the defendant, or its connecting carrier, and for which fire the defendant and its conecting carrier are in no way responsible, and where the loss is not caused by any neglect of the defendant or its connecting carrier in exposing said cotton to fire or any neglect in failing to attempt to rescue said cotton from fire. So, therefore, we see that non-liability of the defendant results by the terms of the Carmack Amendment, independently of any stipulation in the bill of lading, but as stated by Judge LURTON in the Croninger case, and reaffirmed by Judge McREYNOLDS in the Ranking case: ''The shipment being interstate, the rights and liabilities of the parties depend upon acts of Congress, the bill of lading, and the common-law rules as accepted and applied in federal tribunals.''

The only Act of Congress applicable is the Carmack Amendment, and according to the terms of that act, there is no liability.

The Bill of Lading: The bill of lading provides for non-liability except for negligence and for non-liability ''for unavoidable cause of the loss?'' Unavoidable cause does not mean actual or physical impossibility to prevent. Its meaning was well defined by the United States circuit court of apepals from the sixth circuit (Judge Lurton delivering the opinion of the court):

''If defendants have shown, with respect to each possible cause, that the effect could not have been avoided by the use of care, caution and skill, then the effect was in law unavoidable, and the collision, in legal phraseology, inevitable.

It is not meant by the expression, 'inevitable accident,' one which it was physically impossible, from the nature of things, for the defendant to have prevented. We only mean that it was an occurrence which would not be avoided by that degree of prudence, foresight, care and caution which the law requires of every one under the circumstances of the particular case.'' (*The Olympia,* 61 Fed. 127.)

Hence under the bill of lading, the defendant is not liable in the absence of any negligence in regard to the fire, for it is consistent, with the Carmack Amendment to apply the general common law (as administered by the federal courts) which permits a common carrier to exempt itself from liability except for negligence. The plea shows that the cotton was promptly transported, but even if there were negligent delay in its transportation, still under the general common law as administered by the federal courts, the delay would not be treated as the cause of the loss; and nothwithstanding the delay which may have caused the car to be at the place it was when the fire broke out, yet the defendant would not be liable in the absence of

negligence in regard to the origin or spread of the fire and in the absence of negligence as to rescueing the property after the fire broke out. In the leading case of *Memphis & Charleston Railroad* v. *Reeves,* 10 Wall. 176, there was involved the loss of goods resulting from a flood, the contention of the plaintiff being that but for the delay in the transportation of the goods, the same would not have been exposed to the flood. The court in that case announced that, legally considered, the flood, an act of God, was the cause of the loss and not the delay of the carrier in the transportation of the goods. This is the doctrine of most of the American courts including the state of Mississippi. In the case of *Railroad Company* v. *Millsaps,* 76 Miss. 855, this court held that although there be delay in the transportation of goods, a common carrier is not respensible for the destruction of same by fire which originated on the premises of another and which could not be foreseen by the carrier. In holding the railroad company not liable, this court thus stated the question:

"Grant, as we think is shown, that the delay in transportation was negligent, was there any casual connection between such delay as the proximate cause and the loss? Or was the loss due wholly to a fire purely accidental, as to which fire, in its origin and progress, the appellant was wholly free from blame, the fire being the independent, intervening proximate cause of the loss.

The Federal Common Law. Having disposed, therefore, of the liability under the Act of Congress, and under the bill of lading, there only remains the liability under the "common-law rules as accepted and applied in Federation tribunals. *C. N. O. & T. P. Ry. Co.* v. *Rankin,* 241 U. S. 227. The common-law rules as accepted and applied in federal tribunals permit the carrier to exempt himself from liability execpt for negligence. *Adams Express Co.* v. *Croninger,* 226 U. S. 509; *York Co.* v. *I. C. R. R. Co.,* 3 Wall. 107; *Railroad*

*Co.* v. *Manchester Mills,* 88 Tenn.; *New Jersey Steam Nav. Co.* v. *Merchants Bank,* 6 How. 344, 12 L. Ed. 465; *New York C. R. Co.* v. *Lockwood,* 17 Wall. 357, 21 L. Ed. 627; *Bank of Kentucky* v. *Adams,* 93 U. S. 174, 23 L. Ed. 872; *York Mfg. Co.* v. *Illinois C. R. Co.,* 3 Wall., 107 L. Ed. 170; *Cau* v. *Texas & Pacific R. Co.,* 194 U. S. 426, 428; *Arthur et al.* v. *Texas & Pacific R. Co.,* 204 U. S. 505; Hutchinson on Carriers, sec. 226.

Conclusion. To summarize what we have said above, we will say:

First: The liability of the defendant must be determined by the federal statute known as the Carmack Amendment and by the general common law as applied by the federal courts to the bill of lading under which the shipment moved.

Second: The loss or damage was not caused by the defendant or any connecting carrier and hence there is no liability under the Carmack Amendment.

Third: The stipulation in the bill of lading exempting the defendant from liability except for negligence is a valid one under the general law as administered by the federal courts and is based upon a sufficient consideration under the decisions of the federal courts, and is consistent with the Carmack Amendment.

We submit, therefore, that the judgment should be reversed and the cause remanded.

*McLaurin & Arminstead,* for appellee.

We admit that a mere delay in transportation which causes the freight to be where it was destroyed by an act of God or an unavoidable cause, will not make the carrier liable, but this plea shows on its face that this cotton was not where it was when burned as a result of mere delay in transportation. It was not side tracked, because of delay. The loss here was, we think, "caused by" the forces proximately working to that end in conjunction with the fire, and these other forces

that are other than the fire were negligently put in
motion by the appellant's agents. Furthermore, there
are many precedents for the rule that the mere delay
coupled with an unavoidable cause will make the car-
rier liable for loss of freight. See *Read* v. *Spaulding,*
30 N. Y. 630, 86 Am. Dec. 426; *Green-Wheeler Shoe Co.*
v. *Chicago, etc., R. Co.,* 130 Ia. 123, 8 Ann. Cas. 45,
106 N. W. 498, 5 L. R. A. (N. S.) 882; *Bibb Broom
Corn Co.* v. *Atchinson, etc., R. Co.,* 94 Minn. 269, 3
Ann. Case 450, 102 N. W. 709, 69 L. R. A. 509, 110
Am. St. Rep. 361; *Alabama Great Southern R. Co.*
v. *Quarles,* 145 Ala. 436, 8 Ann. Cas. 308, 40 So. 120,
117 Am. St. Rep. 54; *Wade* v. *Pittsburg, etc., R. Co.,*
162 Ill. 545, 44 N. E. 888, 53 Am. St. Rep. 332, 35 L.
R. A. 356; see, also, 4 R. C. L., page 722; Also, Moore
on Carriers, page 371. We think the law is that if the
negligence or fault of the carrier contributed proxi-
mately to the injury or loss that was directly caused
by an act of God or unavoidable causes, the carrier is
liable if the loss or injury followed in ordinary natural
sequence from, or was a natural or probable result of,
the carrier's negligence or default. In the latter class
of cases, the liability of the carrier is for a negligent
breach of contract or legal duty; and the rights of the
parties are determined by the rules of law relative to
actual negligence. *Seaboard Airline* v. *Mullen,* 70 Fla.
458, Ann. Cas. 1918 A, page 579.

Second. As to the congestion of freight at New
Bedford, and the liability of the teamsters to handle
the cotton.

In this suit the loss of the freight is admitted. Its
value is not in dispute and under the Carmack Amend-
ment it was not incumbent upon the plaintiff to show
that an act of the carrier occasioned the loss. See
*G. H. & S. Ry. Co.* v. *Wallace,* 223 U. S. 481, and
note; *C. & E. I. R. R. Co.* v. *Collins Produce Co.,*
235 Fed. Rep. 857; *Galveston, Harrisburg & San Antonio*

*Ry. Co.* v. *Wallace,* 223 U. S. 481, 492, 32 Sup. Ct. 205, 56 L. Ed. 516.

It became, therefore, incumbent upon the defendant to show that the loss was due solely to some one or more of the causes which by law exempted it from liability.

If the loss be occasioned by a commingling of the "act of God" and the negligence of the carrier, the latter is not relieved from liability. *Wolf* v. *American Express Co.,* 43 Mo. 421, 97 Am. Dec. 406; *Wald* v. *Pittsburg C. C. & St. L. R. R.,* 162 Ill. 545, 44 N. E. 888, 35 L. R. A. 356, 53 Am. St. Rep. 332. For the same reason we conclude that the exception represented by the words "authority of law" as they appear in the bill of lading relieves the carrier from liability only when such cause is free from any act of the carrier contributing to the loss. 4 Ruling Case Law 199; *B. & O. R. R.* v. *O'Donnell,* 45 Ohio St. 489, 32 N. E. 476, 21 L. R. A. 117, 34 Am. St. Rep. 579; *I. C. R. R. Co.* v. *McClellan,* 54 Ill. 58 5 Am. Rep. 83."

Third. The plea shows that the cotton was stopped in transit because of a congestion of freight at New Bedford coupled with the inability of the teamsters to handle it at the time it was due to have reached New Bedford, March the 28th or 29th.

The plea nowhere shows that regardless of this condition on March the 28th and 29th, that there was not ample freight yards in New Bedford for the freight to be carried and sidetracked there, and there to have awaited the convenience of the teamsters, even if the convenience of the teamsters had to be consulted. The presumption is, that this could have been done and the law is that it should have been done, and as stated, the plea nowhere shows that it could not have been done when it was the duty of the defendant below to have explained all the facts, the knowledge thereof being peculiarly with the defendant. If the carrier had thus performed his part of the contract,

he could have put the plaintiff in default regardless of the congestion or the fire, the effect of the disposition or ability of the teamsters to handle the cotton and the carrier's responsibility as a common carrier would have ceased and that of a warehouseman begun. But the carrier did that which was presumably unnecessary in order to suit its own convenience.

This, we say, was a negligent delay and where there has been a negligence coupled with an act of God or unavoidable causes, the carrier cannot excuse himself by a plea of unavoidable cause of loss. See *Seaboard Airline* v. *Mullen,* 70 Fla. 467, Ann. Cas. 1918A, 576, and note, and L. R. A. 1916D, 982, and note.

The *Millsapps Case,* 76 Miss. 855, is an entirely different proposition. See also Hutchinson on Carriers (3 Ed.), section 658; *Ragsdale Case,* 36 Miss. 458, and as to the burden of proof, the *Burnham Case,* 81 Miss. 46.

Fourth. This plea shows that there was an unusual and unexpected congestion of freight traffic in New Bedford, "prevailing at the time said cotton would have reached New Bedford," that is, March the 28th or 29th and that the "N. Y., N. H. & H. R. R. Co. made all reasonable efforts to relieve the congested condition herein referred to at the earliest practical date." But it does not show, first, when the conjection was removed; second, that it was not removed in ample time before the fire, April the 29th, for the cotton to have been safely transported from East Freeport to New Bedford before the date of the fire. With the burden on the defendant below, appellee here, to fully explain any reasonable delay, it seems to us that this absolute failure to show a continuation of the impediment against final transportation to New Bedford is absolutely fatal to any

successful defense that the railroad company can impose for the loss of this cotton.

Fifth. The plea shows that because of the congestion at New Bedford on March the 28th, 1907, the car containing the cotton was sidetracked at East Freeport, a hamlet nine miles distant from New Bedford on a spur track, "said side track (spur track being the point most convenient for placing said car."

In the case of the *Railway Co.* v. *Birchetto,* 72 Miss. 891, the railroad company was required to pay for a shipment of vegetables consigned to a northern market, because of the fact that there was a strike on a connecting carrier with the defendant carrier, and the vegetables could not be forwarded over that road; so, instead of sending the vegetables by another available route, and without communicating with the shipper, the shipment was diverted to a southern market where they were sold at a sacrifice. Now, the principle is the same here. Hutchinson on Carriers, (3 Ed.), section 651.

Sixth. The plea shows that the car was shifted from the carrier's main line sidetracks and service tracks, where common knowledge teaches us it would have been more susceptible to protection, to an. industrial track on the land of another party, nine hundred feet distant at right angles from the main line of the railroad, a track necessarily open only at one end and thereby with limited switching capacity. This was a digression. The plea to it does show that the sidetrack belonged to the railroad company; that is, we assume, that the iron, spikes and railroad ties belonged to the railroad company. But it shows that it was a track at right angles to the railroad for the purpose of course of serving a particular industry. The distance the car was allowed to be thus carried from the railroad company's own property where the best of protection, even if there was any at East

Freeport, could have been had was nine hundred feet. Now to illustrate, suppose this said ice plant, instead of being nine hundred feet from the main line of the railroad, had been two or three miles therefrom, or any other unreasonable distance. Could it be argued that the railroad company, in thus sidetracking appellee's property, had given to that property the careful protection that the law required it to have? We think to ask the question is to answer it. Now in so far as practical purposes are concerned, it proved just as fatal to the protection of the property in question, the nine bales of cotton, for it to be nine hundred feet from appellant's premises as if it had been nine miles. We think the principle is just the same.

It is admitted by the plea that it was taken so far from the main line of the railroad that the servants of the railroad when the fire broke out were not able to move the property in time to prevent its burning. If it had been left on a sidetrack on the appellant's property and then burned in spite of all effort, it might have presented a different question. Furthermore, the court should take note of the fact that instead of sidetracking this property, if it had to be sidetracked, at some point where there was fire protection, and we must assume that there was a point because it is the duty of the defendant to have explained that there was not if there was not, the railroad company located it at a point far from its main line where it proved that there was no fire protection and where, as is shown by the plea, it was physically impossible for the railroad company to move the property after the fire broke out, and this presumably with a switch engine.

ETHRIDGE, J., delivered the opinion of the court.

This is a suit by Philip S. Craig et al., executors of W. C. Craig, on behalf of W. C. Craig & Co., against

the Yazoo & Mississippi Valley Railroad Company for the loss of nine bales of cotton shipped by W. C. Craig & Co. over the Yazoo & Mississippi Valley Railroad to New Bedford, Mass., of the value of eight hundred forty-nine dollars and thirty cents, the cotton having been destroyed at East Freetown, Mass., a station near New Bedford, Mass.; said shipment not having been transported to New Bedford, Mass., and delivered there to plaintiffs or their order.

The railroad company filed a special plea alleging:

That, promptly after the receipt of said cotton from the plaintiff, it promptly and within a reasonable time after the issuance of the bill of lading transported by successive railroad companies acting as connecting carriers until it was finally delivered to the New York, New Haven & Hartford Railroad Company at Hopewell, in the state of New York, March 22, 1907, for ultimate transportation to destination, said point of destination being located on the line of the New York, New Haven & Hartford Railroad Company; that that company within a reasonable time after receipt by said company of said cotton transported the cotton to East Freetown, Mass., being a station in the town of Freetown and being within about nine miles of destination, being the station next to New Bedford on the line of said carrier, said cotton arriving in said town on March 28, 1907; "that owing to the unusual and unexpected congestion in freight traffic at New Bedford, on the line of said New York, New Haven & Hartford Railroad Company, prevailing at the time said cotton would have reached New Bedford had it not been stopped at East Freetown, and owing to the fact that at the time mentioned the local teamsters in said city of New Bedford who were accustomed to handle cotton arriving in said city were so occupied moving freights which had already arrived in said city, as to have been unable to have unloaded the cotton herein referred to upon arrival of said car, the car containing the cotton re-

ferred to in said plaintiff's declaration was placed by said New York, New Haven & Hartford Railroad Company on a side track in said East Freetown on the 28th day of March, 1907, along with other cars containing cotton in transit to New Bedford, said side track being the point most convenient to New Bedford for placing said cars pending relief of the congested condition prevailing at New Bedford, and the inability of the teamsters there to handle the cotton; that the said New York, New Haven & Hartford Railroad Company made all reasonable efforts to relieve the congested condition herein referred to at the earliest practical date; that the side track on which the cotton in question was stored belongs to said New York, New Haven & Hartford Railroad Company, though resting upon land of other parties, and lies at right angles with the main line of said New York, New Haven & Hartford Railroad Company's track, and ran for a distance of approximately nine hundred feet, where is located an ice storing plant belonging to the Burns River Ice Corporation, a company in which said New York, New Haven & Hartford Railroad Company had no interest whatever, said ice plant being situated on land belonging to parties other than said railroad company; that the said car of cotton in question was standing on said side track adjacent to the plant of said ice corporation; that without any fault on the part of this defendant, and without any fault on the part of the New York, New Haven & Hartford Railroad Company, a fire originated in the said plant of said ice corporation; that this defendant did not, nor did said New York, New Haven & Hartford Railroad Company, know or have any reason to believe that the fire herein referred to would occur; that the fire referred to occurred at two o'clock p. m. April 29, 1907; that on the afternoon when the said fire occurred the wind was blowing from the direction of said fire towards the said side track on which said cotton was standing, and embers were blown by said

wind from the said icehouse across said track; that while the said New York, New Haven & Hartford Railroad Company immediately after said fire started began to remove from said side track the cars standing thereon, and did in fact remove all of said cars except the car containing the cotton referred to in the declaration herein, yet, notwithstanding the fact that said company made every reasonable effort to remove the car containing the cotton herein referred to, fire was communicated to said car from said ice plant, and said cotton destroyed before it could be removed to a place of safety; that the said New York, New Haven & Hartford Railroad Company was not responsible for and had no connection with the origin of said fire."

The bill of lading issued by the company did not specifically contain a clause exempting the carrier from loss by fire during transportation. The only clause pertinent to this opinion in the bill of lading in reference to nonresponsibility of the carrier reads as follows:

"This company shall not be responsible for loss or damage by accidents or delays from unavoidable causes: nor for delay, loss or damage caused by strikes or riots, or by quarantine or custom house regulations."

The rule is that a common carrier is responsible for all losses occasioned except those occasioned by the act of God, or the public enemy, except as it may stipulate in its contract against loss or liability at common law. It has been held by the federal supreme court in numerous cases that a carrier may modify its common-law liability by contracting against them, provided it does not contract against its own negligence.

Of course, each case must turn upon the specific provisions in its contract. It will be noted from the above quotation from the bill of lading that the exemption is from responsibility for loss or damage "from accidents or delays arising from unavoidable" causes; there being no allegation in the plea of any strike,

riot, quarantine, or custom house regulations causing or contributing to the risk or loss. The pleadings in this case allege unusual and unexpected congestion in freight traffic at New Bedford prevailing at the time the cotton would have reached New Bedford, and owing to the fact that, at the time mentioned, the local teamsters in the said city of New Bedford, who were accustomed to handle cotton upon arriving in said city, were so occupied in moving freight already arrived in said city they would have ,been unable to have moved the cotton referred to upon its arrival. The extent of the congestion is not pointed out. The fact that the congestion may be "unsual and unexpected" would not necessarily mean that the cotton could not have been stored there, and removed from the carrier to the shipper within the time it was side-tracked, or within a reasonable time after its arrival; and, while it is alleged that the teamsters who "usually unloaded the cotton" were busy at the time, it is not alleged that there were not other teamsters or persons who could unload and handle cotton; nor is it alleged how long they were busy and unable to handle the cotton had it been sent for handling. It is not alleged how long the congestion, such as it was, existed, and there is no issuable fact in the plea on this proposition. The pleading is a general conclusion, and it is difficult to see how issue could have been tendered, and what proof would have been brought forward to justify or sustain the allegations of this plea.

The facts should be set forth, and it ought to have been alleged with sufficient certainty to appear that the company could not have stored the cotton at New Bedford on its tracks at the time it should have reached there, and also it should have been alleged how long this condition existed so that the court could have determined whether the facts pleaded would have sustained a verdict for the defendant. So far

as this pleading shows, it may have been possible to have carried the cotton to New Bedford and stored it there, and, if it was a fact that it could not be moved by the customary teamsters, the plaintiff might have secured other persons, or might have himself unloaded the cotton and disposed of it in some safe manner.

The defendant declined to plead further when the court sustained the demurrer to this plea and suffered final judgment to be entered against it.

A plea is construed most strongly against the pleader, and we are bound to assume that the facts are pleaded as strongly in the plea as they could be under the facts governing the transaction.

We think the carrier failed to exonerate itself from its liability under the bill of lading.

It is insisted here in argument that, unless the loss was caused by the New York, New Haven & Hartford Railroad Company, the defendant is not responsible under the terms of the Carmack Amendment (Act Cong. June 29, 1906, chapter 3591, section 7, pars. 11, 12, 34, Stat. 595 [Comp. St. 1916, sections 8604a, 8604aa]). In other words, as we understand the argument, that the defendant is not responsible unless the loss was caused by some affirmative act of the connecting carrier, the New York, New Haven & Hartford Railroad Company.

As we understand the decision of the United States supreme court, the connecting carrier is to be treated as though it was a part of the original carrier's line.

In *G., H. & S. A. Ry. Co. v. Wallace*, 223 U. S. 481, 32 Sup. Ct. 205, 56 L. Ed. 517, the United States supreme court held as follows:

"Under the Carmack Amendment, as already construed in the Riverside Mills Case, wherever the carrier voluntarily accepts goods for shipment to a

point on another line in another state, it is conclusively treated as having made a through contract. It thereby elected to treat the connecting carriers as its agents, for all purposes of transportation and delivery. This case, then, must be treated as though the point of destination was on its own line, and is to be governed by the same rules of pleading, practice, and presumption as would have applied if the shipment had been between stations in different states, but both on the company's railroad. Thus considered, when the holders of the bills of lading proved the goods had not been delivered to the consignee, the presumption arose that they had been lost by reason of negligence of the carriers or its agents. The burden of proof that the loss resulted from some cause for which the initial carrier was not responsible in law or by contract was then cast upon the carrier. The plaintiffs were not obliged both to prove their case and to disprove the existence of a defense. The carrier and its agents, having received possession of the goods, were charged with the duty of delivering them, or explaining why that had not been done. This must be so, because carriers not only have better means, but often the only means, of making such a proof. If the failure to deliver was due to the act of God, the public enemy, or some cause against which it might lawfully contract, it was for the carrier to bring itself within such exception.''

We think the plea in this case insufficient and states no defense. Certainly it states no facts upon which issue could be accepted.

The court below having reached the same conclusion, the judgment is affirmed.

*Affirmed.*