248 So.2d 426 (1971)
ILLINOIS CENTRAL RAILROAD COMPANY
v.
BENOIT GIN CO., Inc. and Ranger Insurance Co.
No. 46209.
Supreme Court of Mississippi.
May 24, 1971.
Sillers, Roberts, Pearson & Eddins, Rosedale, for appellant.
Jacobs, Griffith & Hatcher, Cleveland, Lake, Tindall & Hunger, Greenville, for appellees.
SMITH, Justice.
Benoit Gin Company recovered a judgment for $7,741.25 against Illinois Central Railroad Company in an action begun by it in the Circuit Court of the First Judicial District of Bolivar County against that company and Ranger Insurance Company. Illinois Central Railroad Company appeals.
In its suit, the gin company sought to recover for fire damage to 61 bales of cotton. The basis of the action against the railroad company was that it was liable as a common carrier of the cotton at the time of the fire under the rule of "strict liability." Alternatively, Ranger was made a defendant under an allegation that the cotton had been insured by it against fire originating on the gin premises. No question is raised as to the form of the action or joinder.
The railroad company answered, alleging that it was not liable because the fire resulted from a "fire packed" bale which had been included in the shipment by the gin company. Ranger's answer asserted that it *427 was not liable because the fire did not originate on the gin premises but originated while the cotton was in the possession of and being transported by the railroad company.
The facts may be summarized as follows. On October 10, 1969, the cotton was delivered by the gin company to the railroad for shipment from its plant at Benoit to Greenville. To all appearances it was in good condition and there was no indication of fire at the time the cotton was loaded onto the railroad car. The train carrying the cotton left Benoit at 2:00 p.m. the same day and arrived at the railroad company's yard in Greenville at 3:30 p.m. There it remained until 11:30 p.m. when it was moved to a spur track leading to a compress at Greenville. Throughout the entire time involved at least one of the doors of the car in which the cotton was being transported was not closed but remained open. There was testimony that at 1:30 a.m. on October 11 there was no indication of fire and no smell of smoke. However, at some time between 4:00 and 4:30 a.m. on October 11 it was discovered that the cotton was on fire in the railroad car. Later on, when the damaged cotton had been removed from the car, it was found that bale number 1802 had a hole burned in its end which was 13 inches deep. It is the position of the railroad company that this shows that it was a "fire packed" bale which had been on fire at the time it left the gin company premises.
It was shown by undisputed evidence that the gin company employed watchers who constantly observed the ginning process as it proceeded and that upon any indication of fire or other suspicious circumstance the ginning process was stopped, a door was swung so that the suspected cotton, instead of continuing through the gin, was ejected upon the floor. Then, after cleaning out the machinery, the bale in question, as well as the bale which had been ginned immediately before it and the one ginned immediately after it, were set apart for a sufficient number of hours to determine whether there was, in fact, fire.
On October 10 such a fire had occurred at the gin in bale number 1799. The stated procedures were followed, and this bale and the next and preceding bales were tagged as "suspected" bales. None of these bales was included in the shipment here involved. No fire developed in any of the suspected bales so tagged and set aside, and about two weeks later they were included in another shipment which left the gin on October 24.
The railroad company offered the manager of the gin at Skene as an expert witness on cotton fires. The court, after considering the witness's own testimony as to his qualifications, ruled that it had not been shown that he possessed that degree of specialized knowledge, training or skill in the area under consideration necessary to qualify him as an expert on the subject. Nothing at all was shown or attempted to be shown as to what the testimony of this witness would have been if he had been allowed to testify as an expert on cotton fires.
In this state of the record, it was clear that one (but only one) of the defendants was liable for the loss. If the fire originated on the premises of the gin company, it was covered by the Ranger policy; if it did not, then the liability was that of the railroad company. At the conclusion of all of the evidence, the trial court, on appropriate motions, instructed the jury peremptorily to find for the insurance company and against the railroad company. The amount of the damages was stipulated.
It was undisputed that there had been no indication of fire when the cotton was turned over to the railroad and loaded in the car. Nor was there anything to suggest fire at 2:00 p.m. when it left Benoit. Neither was there any evidence suggesting fire or smoke between 3:30 p.m. and 11:30 p.m. while the car remained in the railroad yard at Greenville. At 11:30 p.m., when the car containing the cotton was removed *428 to the spur track, there still was no evidence of fire or smoke. At 1:30 a.m. the next morning an observer testified that the cotton was not on fire. It was not until 4:00 a.m. that it was discovered that the cotton in the car was on fire.
The testimony as to these circumstances was not in dispute and there was no evidence sufficient to support a factual finding by a jury that the fire originated on the gin premises and thus was covered by Ranger's policy. The same facts, especially in the complete absence of countervailing evidence, show that the cotton was received by the railroad company for transportation in good condition so far as fire was concerned and was transported in its car, open and unguarded, and continued in its custody and under its control from 2:00 p.m. on October 10 until it was discovered to be on fire in the car at 4:00 a.m. on October 11. Under the circumstances, the burden was upon the railroad to prove that the fire was not the result of negligence upon its part.
In Yazoo & M.V.R. Co. v. Craig, 118 Miss. 299, 315, 79 So. 102, 103 (1918), the rule was stated thus,
The rule is that a common carrier is responsible for all losses occasioned except those occasioned by the act of God, or the public enemy, except as it may stipulate in its contract against loss or liability at common law. * * *.
In Baltimore & O.R. Co. v. Johl & Bergman, 180 Miss. 593, 607-608, 177 So. 778, 782 (1938) this Court said:
The common-law liability of a common carrier is that of an insurer, and the only exception thereto is the act of God or of the public enemy; and the duty of the carrier was not only to show that the act of God was the proximate cause of the damage or loss, but the burden was further on it to prove the absence of negligence on its part, for the reason that the facts to be proven are within the knowledge of the carrier; and that is the rule in Mississippi as found in Chicago, St. L. & N.O.R. Co. v. Moss & Co., 60 Minn. 1003, 45 Am.Rep. 428; Newberger Cotton Co. v. Illinois Central R. Co., 75 Miss. 303, 308, 23 So. 186.
To the same effect was the discussion in Southeastern Express Co. v. Namie, 182 Miss. 447, 459, 181 So. 515, 516 (1938), where it was held:
The liability of a common carrier of inanimate freight or express is practically that of an insurer against loss, injury, or damage except as to loss or injury caused by the act of God, or by the public authorities or the public enemy, or by the inherent nature or quality of the goods or by the act or default of the owner or shipper himself. And as to the stated exceptions, the burden of pleading and proof is on the carrier. 9 Am.Jur. pages 813-818, 847; 10 C.J. p. 109 et seq.; 1 Michie Carriers, § 989; Yazoo & M.V. Railroad R. Co. v. Craig, 118 Miss. 299, 315, 79 So. 102; Spann v. Alabama & V. Railroad Co., 113 Miss. 239, 74 So. 141. (Emphasis added).
See also Illinois Cent. R. Co. v. Paxton, 187 Miss. 858, 193 So. 915 (1940).
The railroad company failed to meet this burden and the action of the trial court in peremptorily instructing the jury to find for Ranger and against the railroad was correct.
The only other matter assigned as error is the refusal of the court to allow the manager of a gin located at Skene to testify as an expert on cotton fires. Ordinarily, the sufficiency of the specialized knowledge, training, or experience of a proffered witness to qualify him as an expert in a particular field is a matter within the sound judicial discretion of the trial judge. Unless there is an abuse of that discretion the determination made by the trial judge will not be disturbed on appeal. In the present case, the qualification of the witness as an expert on cotton fires, as *429 briefly stated by him, was far from conclusive upon the question. It would be difficult to say that the trial judge abused his discretion in declining to allow him to testify as an expert. However, we have no means of determining from the record what the testimony of this witness would have been if he had been permitted to testify, nor whether it would have been relevant, material and competent upon the issue in the case.
In Russell v. Mississippi Central Railroad Company, 239 Miss. 741, 750, 125 So.2d 283, 286 (1960) we stated:
The error assigned refusing the civil engineer and surveyor to testify as expert witnesses regarding whether or not the crossing involved was a dangerous crossing, and extrahazardous to the traveling public, especially at night, was clearly invading the province of the jury in seeking an opinion. The engineer testified to all facts observed by him. The plaintiff cannot complain of the court's ruling since no showing was made of what the response of the witness would have been. (Emphasis added).
In 4 C.J.S. Appeal & Error § 294c (1957) appears the following statement of the rule:
Although there is some authority to the contrary effect, it is usually held that, where a witness has been excluded for incompetency, the ruling of incompetency will not be reviewed unless there is an offer or showing in the trial court of what would have been proved by the witness.
In Gulf, Mobile & N.R. Co. v. Willis, 171 Miss. 732, 739, 158 So. 551, 552 (1935) we said:
The rule has been long established in this jurisdiction that a judgment will not be reversed for error unless it be shown by the record that the error was actually prejudicial and harmful to the rights of the complaining party. Mississippi Utilities Co. v. Smith, 166 Miss. 105, 117, 145 So. 896; Goins v. State, 155 Miss. 662, 667, 124 So. 785. Consonant with that rule, when a party would seek a reversal because of excluded testimony, he must either place the witness on the stand, ask the questions, and have the answers made of record, or else the witness must be presented, and there must be a specific statement of what the answers or testimony of the witness would be, if allowed, so that the court may see from the record itself whether the offered evidence would be material and of benefit to the merits of the case, and whether its exclusion was actually harmful and prejudicial to the offerer. Bradley v. Howell, 161 Miss. 346, 354, 133 So. 660, 134 So. 843.
* * * * * *
[I]t was the duty of appellant to specifically state into the record what was expected to be proved by him, and had the court refused to allow appellant to so state, then the error would be reversible, and not until then. But appellant did not so specifically offer, and we must therefore adhere to our original opinion. (Emphasis added).
Finding no reversible error in the record, the judgment appealed from is affirmed.
Affirmed.
ETHRIDGE, C.J., and RODGERS, PATTERSON and ROBERTSON, JJ., concur.