515 So.2d 852 (1987)
Ann MITCHAM, Individually and as Legal Representative and as Next Friend of the Beneficiaries of Robert D. Mitcham
v.
ILLINOIS CENTRAL GULF RAILROAD COMPANY, et al.
No. 56343.
Supreme Court of Mississippi.
September 2, 1987.
Rehearing Denied December 9, 1987.
*853 S. Robert Hammond, Jr., Bryant, Stennis & Colingo, Jan W. Sellers, Jackson, Sellers & Guest, Hattiesburg, for appellant.
Erskine W. Wells, J. Jerry Langford, Clifford K. Bailey, III, Wells, Wells, Marble & Hurst, Jackson, Francis T. Zachary, Jr., Zachary & Zachary, Hattiesburg, for appellee.
*854 Before WALKER, C.J., and ANDERSON and GRIFFIN, JJ.
WALKER, Chief Justice, for the Court:
This appeal arises from a unanimous jury verdict in the Circuit Court of Forrest County, Mississippi in favor of Illinois Central Gulf Railroad (hereinafter ICGRR) and Thomas Street (hereinafter Street) the train's engineer. On the morning of April 20, 1981 a collision occurred between ICGRR's Engine No. 172 and a City of Richland, Mississippi police car driven by Officer Robert Mitcham, deceased, at the Scarborough Street crossing in Richland, Mississippi. In the lower court, the proof showed that as the train approached the crossing, its bell, which is operated by a switch much like a light switch on an automobile, was on. Additionally, although it was a sunny day, the headlights of the locomotive were in operation.
The Scarborough Street crossing, as it existed on April 20, 1981, was marked and posted with a standardized regulatory sign known as a "railroad crossbuck" as is required by Miss. Code Ann. § 77-9-247 (1972). This "crossbuck" sign was placed approximately fifteen (15) feet from the nearest rail on the west side (Officer Mitcham approached the tracks which run in a north-south direction from the west side) of the Scarborough Street crossing. At such a distance of fifteen (15) feet from the crossing, on April 20, 1981, photographic evidence and testimony showed that a driver should have seen the north-bound train at a distance of approximately nineteen hundred fifty-five (1,955) feet. This was so even though there was some vegetation on ICGRR's right-of-way. Testimony in the lower court established that Officer Mitcham did not stop at the crossing, and that his speed as he reached the tracks was approximately twenty-five (25) miles per hour. As a result of the collision which took place on the above date, Officer Mitcham died either on impact or shortly thereafter. On August 16, 1983, appellant Ann Mitcham filed her complaint against ICGRR and Street, the engineer of the train, seeking damages for the wrongful death of Robert Mitcham. From an adverse jury verdict she has appealed assigning eighteen (18) errors:

GENERAL STATEMENT OF THE LAW
The matter of duties and obligations at railroad crossings, both on the part of operators of railroads and upon drivers of automobiles, is predominately a matter of statutory law. The principal statute that describes these duties and obligations is found in § 77-9-249 of the Mississippi Code, which provides in pertinent part the following:
(1) Whenever any person driving a vehicle approaches a railroad grade crossing under any of the circumstances stated in this section, the driver of such vehicle shall stop within fifty feet but not less than fifteen feet from the nearest rail of such railroad, and shall not proceed until he can do so safely. The foregoing requirements shall apply when:
(a) A clearly visible electric or mechanical signal device gives warning of the immediate approach of a railroad train;
(b) A crossing gate is lowered or when a human flagman gives or continues to give a signal of the approach or passage of a railroad train;
(c) A railroad train approaching within approximately nine hundred feet of the highway crossing emits a signal in accordance with section 77-9-225, and such railroad train, by reason of its speed or nearness to such crossing, is an immediate hazard;
(d) An approaching railroad train is plainly visible and is in hazardous proximity of such crossing.
This provision amended the original version of § 77-9-249 which had provided that a motorist was under a duty to stop at every crossing. A plain reading of this statute imposes a duty upon the driver to stop when one of the enumerated conditions is met. The Fifth Circuit, in its analysis of the new Mississippi statute has observed that:

*855 The Mississippi legislature in 1974 changed a law requiring a stop at all railroad crossings to one requiring a stop only when a train is in hazardous proximity to the crossing and is plainly visible.
Young v. Illinois Central Gulf Railroad Company, 618 F.2d 332, 340 (5th Cir.1980). As has previously been stated, in the case at hand, an approaching train going in a northern direction could be seen for several hundred feet by a vehicle approaching from the east. Further photographic evidence showed that at a distance of twenty-two (22) feet from the nearest rail, a person in an automobile so situated could see an oncoming train at approximately nine hundred fifty (950) feet. Additionally, as required by Miss. Code Ann. § 77-9-225, the train was blowing its horn and ringing its bell, which under § 77-9-249(1)(c) is an enumerated condition under which a duty to stop within fifty (50) feet but not less than fifteen (15) feet arises on the part of the automobile driver. As has been previously noted Officer Mitcham did not stop. Mitcham argues that § 77-9-249 has abrogated the duty to stop, and that a driver should have sufficient unobstructed vision to execute a safe and lawful stop after seeing an oncoming train. Hales v. Illinois Central Gulf Railroad Co., 718 F.2d 138, 142 n. 9 (5th Cir.1983). Mitcham goes further and urges that since there is no longer an absolute duty to stop at a railroad crossing, that a motorist should be permitted to drive at the maximum speed limit without regard to the fact that he is approaching a railroad crossing, and that the distance of unobstructed vision should be based upon this speed. This contention is wholly without merit and borders on the ridiculous. In Illinois Central Railroad Co. v. Smith, 243 Miss. 766, 774, 140 So.2d 856, 859 (1962), this Court was faced with a situation where the driver of an automobile proceeded toward a railroad crossing at approximately fifty (50) miles per hour without undertaking any measures to slacken the speed of his automobile. In finding such to be the sole proximate cause of the resulting collision with a train, the Court noted that a motorist also had a duty to look and listen as he approaches a crossing. Id. Additionally, appellant's argument totally ignores the duties that arise when the signals which are required by § 77-9-249 are given. Under that section a motorist must take such measures as will allow him to come to a stop not less than fifteen (15) feet from the nearest rail, and not proceed until he can do so safely. In construing a statute very similar to § 77-9-249, the Supreme Court of Texas stated that the duty to stop imposed by the blowing of the whistle and the ringing of the bell applies regardless of the train's visibility at the time. Southern Pacific Co. v. Castro, 493 S.W.2d 491, 495 (Tex. 1973). The evidence in the case at hand was that the signals of the train could be heard plainly for nine hundred (900) feet as required by § 77-9-225. Upon this basis, the substantive arguments of the appellant must fail.

I. DID THE TRIAL COURT ERR IN EXCLUDING TESTIMONY AND EVIDENCE OF THREE PRIOR ACCIDENTS AT THE SCARBOROUGH STREET CROSSING?
Prior to trial, the lower court sustained the ICGRR's motion in limine and prohibited the appellants from offering evidence of three (3) prior accidents at the Scarborough Street crossing that had occurred within eighteen (18) months prior to April 20, 1981, the date of the collision. The purpose for which Mitcham sought to enter this evidence was to show that the crossing was ultra-hazardous, and that ICGRR knew of the three (3) accidents but took no action to remedy the situation. Where evidence of other accidents or injuries is used to show the risk that a defendant's conduct has created the requirement of substantial similarity is applied strictly. McCormick on Evidence, § 200 (3rd ed. 1984). This Court has stated that evidence of prior accidents is admissible to show the existence of a dangerous condition and knowledge of such condition only upon a showing of substantial similarity of conditions. Parmes v. Illinois Central Gulf Railroad, 440 So.2d 261, 265 (Miss. 1983). Additionally, this Court has stated that:

*856 In general, the admissibility [of prior accidents] is limited to conditions of permanency and the evidence must show that former accidents happened under substantially the same circumstances as those existing at the time of the accident.
Hartford Insurance Group v. Massey, 216 So.2d 415, 417 (Miss. 1968). In the case sub judice, it must be noted that there is no record of the hearing on the motion in limine, but it can be gathered from the trial record that the lower court found that this situation lacked the requisite permanence of conditions, in that the conditions of the crossing that would have been put into issue, the height of vegetation on ICGRR's right-of-way, change with the seasons. As the only record of this hearing is an allusion to it in the trial record, in which the lower court stated that the prior accidents should be excluded due to dissimilarity, we must assume that there was never a substantial showing of similarity of conditions so as to satisfy the lower court. Under these circumstances the evidence was not admissible to show either the existence of a dangerous condition or knowledge of hazardous circumstances. Parmes, 440 So.2d at 265. Thus, the lower court was correct in excluding evidence of the three (3) prior accidents to prove an ultrahazardous condition, and as such, this assignment of error is without merit.

II. DID THE LOWER COURT ERR IN NOT REQUIRING ICGRR TO PRODUCE THE NOTES, DRAWINGS, AND DIAGRAMS OF TOMMY SMITH RESPECTING THE ACCIDENT OF APRIL 20, 1981, AND RESPECTING THE THREE PREVIOUS ACCIDENTS AT THE SCARBOROUGH STREET CROSSING?
On January 23rd and 24th, 1984, the appellant, Mitcham, had subpoenas duces tecum issued which encompassed the above stated assignment of error. Tommy Smith, the person from whom the materials were sought, was an accident investigator for ICGRR. At the time of issuance of these subpoenas duces tecum the date set for trial, January 30, 1984, was but seven (7) days away. Miss.R.Civ.P. 45 provides in pertinent part:
(b) FOR PRODUCTION OF DOCUMENTARY EVIDENCE.
(1) A subpoena may also command the person to whom it is directed to produce books, papers, documents, or tangible things designated therein; but the court upon motion made promptly and in any event at or before the time specified in the subpoena for compliance therewith, may (A) quash or modify the subpoena if it is unreasonable and oppressive... .
(3) Unless for good cause shown ... a subpoena issued pursuant to subparagraph (b)(1) of this rule shall allow not less than ten days for the person upon whom it is served to produce the books, papers, documents, or tangible things therein specified. (emphasis added)
Thus, it can be seen that the appellant failed to allow not less than ten (10) days for the documents to be produced, as mandated by Rule 45. Upon this basis, the lower court determined that Mitcham had not shown good cause for reducing the time in which to respond. Additionally, it must be noted that the drawings and notes made by Smith subsequent to the April 20, 1981 accident were done in preparation of litigation. Miss.R.Civ.P. 26(b)(3) provides that:
A party may obtain discovery of documents and tangible things otherwise discoverable ... and prepared in anticipation of litigation or for trial by or for another party ... only upon a showing that the party seeking discovery has a substantial need of the materials in preparation of his case and that he is unable without due hardship to obtain the substantial equivalent of the materials by other means. (emphasis added)
Again, this decision is left to the sound discretion of the trial court. As the appellant had, subsequent to the accident, the same opportunity to observe the crossing in as unaltered state as did ICGRR, and as the subpoenas duces tecum were not issued until seven (7) days prior to the date set for trial, we find that this assignment of error is without merit.

*857 III. DID THE LOWER COURT ERR IN EXCLUDING THE VIEW AN APPROACHING MOTORIST WOULD HAVE HAD IF THE RAILROAD RIGHT-OF-WAY HAD BEEN COMPLETELY CLEARED?

IV. DID THE LOWER COURT ERR IN NOT ALLOWING MITCHAM TO PROVE THAT SUBSEQUENT TO APRIL 30, 1981, TRAIN ACTIVATED SIGNALS HAD BEEN INSTALLED?
Mitcham, in Assignments of Error III and IV, argues that evidence should have been allowed as to the remedial measures that were taken subsequent to April 30, 1981, the date of the accident, and how the conditions would have been different had these actions been taken prior to that date.
Courts have generally excluded, when offered as admissions of negligence or fault, evidence of remedial safety measures taken after an injury, such as repairs, changes in construction, or the installation of new safety devices, such as lights, gates, or guards. McCormick on Evidence, § 275 (3rd ed. 1984). This Court, in line with the above stated principal, has said it is improper to introduce evidence of subsequent remedial repairs to establish negligence. Catholic Diocese of Natchez-Jackson v. Jaquith, 224 So.2d 216, 224 (Miss. 1969); Chicago Mill & Lumber Co. v. Carter, 209 Miss. 71, 77, 45 So.2d 854, 856 (1950). In light of the numerous photographs that were entered into evidence, which fairly and accurately depicted the crossing as it existed on April 20, 1981, and as the remedial measures taken by ICGRR (further clearing the crossing and installing lights) were inadmissible, Assignments of Error III and IV must fail.

V. DID THE LOWER COURT ERR IN EXCLUDING THE ICGRR TIME TABLE?

VI. DID THE LOWER COURT ERR IN EXCLUDING THE ICGRR TRAIN ORDER?
In seeking to introduce the time table and train order of ICGRR, the appellants were in effect seeking to prove that ICGRR had imposed upon itself a twenty-five (25) mile-per-hour speed limit at the Scarborough Street crossing. In this context, several ICGRR employees testified to the fact that the appellees did in fact have such a self-imposed speed limit at the crossing in question. The lower court excluded the time table and train order on the basis that they were very complicated and would only confuse the jury. Where evidence that is excluded is proved through the introduction of other evidence, any error as a result of the exclusion is in fact harmless error. New Orleans & N.E. Railroad v. Gable, 252 Miss. 605, 613, 172 So.2d 421, 424 (1965). As there was other evidence introduced, in the form of testimony concerning the contents of these documents, there is no merit in the appellant's contention.

VII. DID THE LOWER COURT ERR IN EXCLUDING EXHIBITS P-20 AND P-21 FOR IDENTIFICATION ONLY?

VIII. DID THE LOWER COURT ERR IN EXCLUDING EXHIBIT P-19 FOR IDENTIFICATION ONLY?
Exhibit P-20, which the appellant argues should have been admitted, simply stated, is a letter from one of the appellant's lawyers to the Mississippi State Highway Department which was written two (2) weeks prior to trial, requesting information on the Scarborough Street crossing. Exhibit P-21 is the Highway Department's reply to that request for information in the form of a one (1) page memo which has attached to it a four-page letter from the Mayor of the City of Richland requesting that signals be installed at Scarborough Street. At best, the contents of these letters were the subjective opinion of the writer as to the need for extra safety measures at the crossing based upon the three (3) accidents which occurred prior to the collision that killed Officer Mitcham. The appellant again argues that the prior accidents should be a critical consideration *858 in evaluating the crossing. For the same reasons as set forth under Assignment of Error I, dealing with proof of prior accidents, Mitcham's argument here again is without merit.
Exhibit P-19 is a Department of Transportation Accident Prediction Formula. This exhibit was excluded because there was no sponsoring witness for cross examination and because this formula was not promulgated or adopted by the State of Mississippi until after the accident occurred. Such questions as pertaining to the admission of evidence, based on relevancy and materiality, are addressed to the broad discretion of the trial court. Young v. Illinois Central Gulf R. Co., 618 F.2d 332, 337 (5th Cir.1980). In the case at hand, we cannot say that the lower court abused its discretion in failing to admit into evidence a test that was not yet in effect at the time of the accident. The appellant's argument is without merit.

IX. DID THE LOWER COURT ERR IN EXCLUDING CERTAIN TESTIMONY OF DR. JOHN BAERWALD?
As previously discussed, ICGRR filed and was granted a motion in limine prior to trial. One portion of the order granting this motion prohibited any opinion testimony that the Scarborough Street crossing was "unusually hazardous" or "extra-hazardous". At trial, Mitcham put on the stand Dr. John E. Baerwald of Champaign, Illinois, an expert in the field of traffic control. Baerwald, using a series of complicated calculations, based on the use of "sight triangles," testified that a motorist driving at the posted speed limit on Scarborough Street should have a clear view down the tracks, at a distance of two hundred fifty (250) feet from the rail nearest the driver, in order to execute a safe stop. The lower court allowed Dr. Baerwald to testify as to safe stopping distances, but in accordance with the motion in limine it prohibited any opinion testimony as to the "extra-hazardous" or "unusually dangerous" nature of the crossing. It is this prohibition that the appellant now assigns as error. In speaking to the question of opinion testimony as it concerns the "ultra-hazardous" condition of a railroad crossing this Court has stated that:
As noted above, the plaintiff sought introduction of the testimony under consideration to establish "the dangerousness" of the overpass, which in effect was opinion-type testimony. To this extent, such opinion testimony was an attempted invasion of the jury's province. Such evidence is error under Illinois Central Railroad Co. v. Williams. Russell v. Mississippi Central Railroad, 239 Miss. 741, 750, 125 So.2d 283, 286 (1960); Columbus and G.R. Co. v. Coleman, 172 Miss. 514, 160 So. 277 (1935). Thus we find that the lower court correctly refused to allow the plaintiff to establish dangerousness of the overpass by testimony which amounted to opinion testimony as an invasion of the province of the jury. (emphasis added)
Parmes v. Illinois Central Gulf R.R., 440 So.2d 261, 267 (Miss. 1983).
Mitcham argues that the decision of the lower court in excluding this testimony should be reversed on the basis of Hollingsworth v. Bovaird Supply Co., 465 So.2d 311 (Miss. 1985). In Hollingsworth this Court stated for the first time that an accident reconstruction expert should be allowed to give his testimony as to how an accident occurred. Id. at 314. This case did not direct itself to the question of opinion testimony as to the "ultra-hazardous" nature of a condition, as in the case presently at hand. Therefore, under Parmes, the argument of Mitcham must fail. This assignment of error has no merit.

X. DID THE LOWER COURT ERR IN EXCLUDING FROM EVIDENCE THE PHOTOGRAPH OFFERED BY THE APPELLANTS AS EXHIBIT P-14 FOR IDENTIFICATION ONLY?
Exhibit P-14, which Mitcham argues should have been admitted at trial, is a photograph taken from the bed of a pickup truck that had been driven seventy (70) feet down the railroad tracks south of the Scarborough Street crossing. The photograph *859 purports to show the view that the brakeman on the locomotive would have seen on the morning of April 20, 1981. At trial, appellant attempted to introduce this photograph through testimony of Mayor Spell of Richland. Questioning of Spell revealed that in determining the height from which the picture should be taken, a City of Richland police officer was sent to the Jackson, Mississippi, railroad yard to find an engine similar to the one involved in the accident, and to measure the height of the brakeman's seat above the tracks. Spell was not present at the time the measurements were taken, and could only offer testimony based upon what the officer had told him. The lower court excluded the photo on the basis that it could not be authenticated with such hearsay evidence. In such a situation, the trial court has wide lattitude and discretion with respect to the admission of photographic evidence. Nelson v. Phoenix of Hartford Insurance Company, 318 So.2d 839, 843 (Miss. 1975). The decision to exclude Exhibit P-14 from evidence was within the sound discretion of the lower court. Butler v. Chrestman, 264 So.2d 812, 816 (Miss. 1972); see also Niles v. Sanders, 218 So.2d 428 (Miss. 1969); Marr v. Nichols, 208 So.2d 770 (Miss. 1968). We therefore find that the exclusion of the photograph was within the sound discretion of the lower court, and Mitcham's argument is without merit.

XI. DID THE LOWER COURT ERR IN ADMITTING TESTIMONY BY TOMMY SMITH AS TO OUT-OF-COURT STATEMENTS MADE BY RUSSEL JONES?
At trial the appellants put into evidence the deposition of Russel Jones, an eyewitness to the accident. In his deposition, Jones stated that as he approached the crossing, and while the train was approximately one hundred (100) feet away, he heard no warning device being sounded by the train. The lower court allowed Tommy Smith, an accident investigator for ICGRR, to testify in rebuttal to the deposition, that Jones had previously made a prior inconsistent statement to him, in that, although he did not hear the train's horn, it may or may not have been blowing. It must be noted here that during the course of the trial, six (6) eyewitnesses (over and above the testimony of Jones) testified that the bell was ringing and that the horn was blowing at intervals. Additionally, all six (6) of these witnesses testified that the signals were loud, and could be clearly heard for some distance. On these facts, this Court does not have to reach a conclusion as to the substantive matter of the introduction of prior inconsistent statements, because the appellant must show not only that there was error in the proceedings of the lower court, but that he was prejudiced by such error. Illinois Central Railroad Co. v. Benoit Gin Co., 248 So.2d 426 (Miss. 1971); Rector v. Shippy, Outzer & Co., 93 Miss. 254, 256, 46 So. 408 (1908). In allowing Smith to testify in rebuttal to a matter which basically was testified to by six (6) eyewitnesses, it cannot be said that Mitcham was prejudiced thereby and was deprived of a substantial right so as to warrant a reversal. Cole v. Cole, 194 Miss. 292, 298, 12 So.2d 425, 426 (1943). The assignment of error is without merit.

XII. DID THE LOWER COURT ERR IN EXCLUDING FROM EVIDENCE THE SLIDES OF PROFESSOR ROBERT McRAE OFFERED AS PLAINTIFFS' EXHIBITS 32-36 FOR IDENTIFICATION PURPOSES?
Professor Robert McRae, an expert in the field of physics, testified at trial in great depth as to the speed the train was going, based upon the point at which the emergency brakes were applied and the stopping distance of the train. During his presentation he used various charts, slides, and graphs. The lower court, based upon the complicated nature of these documents, excluded them from evidence in fear that they might confuse the jury. The United States Supreme Court has recognized the confusing nature of charts and slides in stating:
There is great danger that the jury may assume that once the government has established the figures in its worth computations, *860 the crime automatically follows. The possibility of this increases where the jury ... is allowed to take into the jury room the various charts summarizing the computations; figures have a way of acquiring an existence of their own, independent of the evidence which gave rise to them. (emphasis added)
Holland v. United States, 348 U.S. 121, 127, 75 S.Ct. 127, 132, 99 L.Ed. 150, 160 (1954).
Additionally, it should be recognized that Professor McRae was allowed to give his opinion as to the speed of the train. If the exclusion of the slides was error, it was harmless error, in that appellant was allowed to introduce other evidence, in the form of McRae's testimony, as to the material contained on the slide. New Orleans and Northeastern R.R. Co. v. Gable, 252 Miss. 605, 613, 172 So.2d 421, 424 (1965). Therefore, this assignment is without merit.
There is no merit to the other assignments of error, nor do they require discussing.

CONCLUSION
The case presently at bar is a very complicated case involving substantial amounts of photographic evidence and testimony. The lower court, through its actions, effectively saw to it that all relevant evidence was presented to the jury, and that a correct statement of the law was made through its instructions. It was under these circumstances that the jury returned a unanimous verdict for the appellee. It is upon this basis that we affirm the decision of the lower court.
AFFIRMED.
ROY NOBLE LEE and HAWKINS, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
DAN M. LEE, J., not participating.