510 So.2d 462 (1987)
DETROIT MARINE ENGINEERING
v.
Robert McREE.
No. 56083.
Supreme Court of Mississippi.
February 25, 1987.
Rehearing Denied August 19, 1987.
*463 Cary E. Bufkin, D. Collier Graham, Jr., Shell, Buford, Bufkin, Callicutt & Perry, on appeal only, Louis G. Baine, Jr., Baine & Moore, Jackson, for appellant.
Crymes G. Pittman, Joseph E. Roberts, Jr., Cothren & Pittman, Ross R. Barnett, Jr., Jackson, John C. McLaurin, McLaurin & McLaurin, Brandon, for appellee.
EN BANC
GRIFFIN, Justice, for the Court:

I.
This appeal is from a one million dollar jury decision awarded to the plaintiff and appellee herein, Robert McRee, for personal injuries received out of negligence and strict liability in tort by defendant/appellant herein Detroit Marine Engineering (DME). The focus of appellant's alleged negligence took place on July 16, 1979, when McRee and one D.D. Pepmiller were engaged in bass fishing on the Ross Barnett Reservoir, the two, though not acquainted, having been paired together as partners the evening before for the fishing tournament. The boat, a Challenger "Bass Cat", was owned by one Rick Denson, and was fitted with an outboard motor which was attached to the steering mechanism the breaking of which is the subject of this suit. A small metal plate was fixed to the side of the boat in accordance with federal and state laws, on which was stated the maximum horse power (115 horsepower), of the motor which was included in the maximum weight capacity of the boat, persons, motor and gear.
McRee does not remember the events of the accident, having been found unconscious immediately following its happening, but Pepmiller stated that, after spending the morning fishing in an area known as Low Head Dam, he and his partner McRee were headed back down river at approximately 45 miles per hour, or 2/3rds full throttle, when he heard a "ping" sound and the boat then went into a sharp involuntary right turn. First McRee, then Pepmiller, was thrown overboard. McRee was apparently struck by something while in the water because Pepmiller found him unconscious and bleeding from the right side of his face. The pair was rescued by a passing boat, and McRee was soon after transported to a hospital.
McRee filed suit in the Circuit Court of Rankin County against the boat owner (Denson) and its operator (Pepmiller), as well as appellant, DME, the company which marketed and sold the single rack and pinion mechanical steering device installed in the boat by its manufacturer. In his complaint, McRee alleged negligent design and strict products liability against DME in charging negligent operation and maintenance of the boat by Denson and Pepmiller. In so alleging negligent design and strict *464 products liability by DME, McRee joined Denson and Pepmiller in their defense that the steering rod was defective in that its composition of resulpherized, free-machining steel was defective and unsuitable for use in the product, and that the resultant fatigue encountered in powering the boat and turning the wheel caused the rack and pinion device to fracture, thereby resulting in the accident which led to the case at bar.
The evidence put forth at trial did indeed show that the boat went into a hard right turn because a portion of the mechanical steering device called a "cable end rod" or "push-pull rod" had fractured and separated from its attachment to the motor. Proof revealed that the failure of the steering rod was caused by fatigue fracture. However, what actually caused this fatigue fracture was at issue, as well as whether the manner in which the steering mechanism and motor were operated constituted negligence per se under allegedly applicable "boating safety" state and federal statute and regulations.
DME attempted to offer into evidence such statutes and regulations in order to counter allegations of negligent design and strict products liability, in that the steering system had not been used as intended, that such prolonged use resulted in the subsequent breaking of the steering cable, and that such use was not foreseeable by DME. On motion in limine by defendants Denson and Pepmiller, however, the trial court declined to allow the statutes and regulations themselves to come into evidence during the trial.
While we would agree with appellant's argument that it is error by a trial court to sustain a motion in limine which excludes large portions of evidence and testimony which relate to some conceivable element of the case when specific objections to such evidence may be specifically dealt with at trial, see, e.g., McCay v. Jones, 354 So.2d 1095 (Miss. 1978), we are disinclined to apply these rules to the case at bar where the federal statutes and regulations promulgated thereunder as adopted by our law, are in no way related to the particular violation alleged by appellant DME. Furthermore, despite appellant's argument to the contrary, the court allowed all relevant and material evidence; only the actual statutes and regulations themselves pertaining to negligence in the case were precluded.
In its order on the motion in limine, the trial court said, "The court sustains the motion only to the extent that the parties were not permitted to introduce into evidence a copy of all or part of the Federal Boat Safety Act of 1971, 46 U.S.C. 1451, et seq., or a copy of all or part of any federal regulations promulgated under the Act, or a copy of all or a part of the Mississippi Boating Law of 1960, (Miss. Code Ann. § 59-21-1, et seq.), but the remaining part of the motion was denied. The court's ruling was announced to the parties before the trial began... ." We find the case to have been tried along the parameters established by the lower court, and upon our review of the record note numerous instances of the defendant having made mention of the statutes and regulations, as well as reference to the intended purpose of introduction of DME's defense of product misuse by the co-defendants Denson and Pepmiller.
Hence, we are at a loss as to see any prejudicial error committed by the trial court in granting the motion in limine simply because the substance of defendant's argument and theory of the case was allowed into evidence, as well as numerous references to the boating statutes and regulations themselves, even though their actual text itself was excluded.
Finally, in dispensing with this particular assignment of error made by appellant, we are not convinced that the metal plate in question fixed to the boat's hull is intended to infer anything more than what the regulations themselves say: e.g., that the plate must be fixed on the boat, and use of an improperly marked boat is in violation of these regulations. The federal regulations as adopted by Miss. Code Ann. § 59-21-81 (1972), which provides in part that,
In addition to the requirements imposed by this section (Mississippi Boating Safety Act), all vessels shall comply with all *465 federal regulations applicable to vessels of such classification.
read:
Each boat must be marked ... with the maximum horsepower capacity determined under § 183.53
33.C.F.R. 183.23 and
Maximum horsepower marked on a boat must not exceed horsepower capacity (as so determined).
33.C.F.R. 183.53.
Given the statutes and regulations (as set forth by appellant in its argument) the mere placement of a larger motor than what is called for on a boat properly marked with a Coast Guard capacity plate cannot amount to negligence per se. The plate signifies the proper weight for flotation purposes. The testimony of the representative of the corporation manufacturing the "Bass Cat" (Challenger, Inc.), confirms this. The section sought to be introduced by DME cannot be extended to cover what size motor is attached to a particular steering mechanism. Even one of appellant's own witnesses agreed that the "capacity" plate refer to weight on the boat, not to the size motor attached to DME's steering gear.
Because our law dictates that unless a particular statute at issue in a lawsuit is designed to encompass a specific violation or infraction of the rule, it is not improper in a case such as this for the trial judge to grant a motion in limine refusing admission of evidence deemed irrelevant to the statute in question, or later to refuse a jury instruction directed to the same. By way of anology, we are presented with an example of a man who speeds his car along the highway beyond the limit set by federal and state regulations and ends up running into a tree on the side of the road because of a failure of the steering mechanism in his vehicle: the spirit of the laws promulgated by the government is not such as to predetermine that he will later be defeated in a lawsuit against the manufacturer of the steering device with the defense of failure to observe posted speed limits and instructions to the jury concerning negligence per se. Such a theory of defense is illogically applied and is contrary to the substance of the laws.
Furthermore, we are not persuaded by appellant's argument in and of itself that the boat was not used as intended and was in fact misused, and such misuse was not foreseeable by DME, in that they anticipated attachment of a motor having higher horsepower than the one actually placed on the boat. Testimony by the Challenger representative mentioned infra revealed that no limits by way of any written or oral instructions were given by DME to Challenger as to the size engine recommended or desired for the steering used on the type of boat in question. Thorough examination of the trial record has unearthed no evidence of lack of foreseeability: there is simply no testimony to support the proposition that DME expected only 115 horsepower motors to be attached to their steering mechanism. In fact, the same Challenger representative testified to receiving a set of link arm kit instructions which specifically stated that the steering mechanism was designed for everything "from 50 h.p. up".
We can find no evidence in the record which alleges that the placing of the 200 horsepower motor on the 115 horsepower rated vessel and its operation was the proximate cause or even a proximate contributing cause of the cable's failure and the subsequent accident. Instructions to a jury (in this case, we speak of the requested and subsequently denied negligence per se instruction made by DME) must be based on evidence placed into the record before they can be properly granted. McBroom v. State, 217 Miss. 338, 64 So.2d 144 (1953).
In addition to there being no evidence that the horsepower rating on the boat is related to the mechanical steering system, much proof was put on concerning what appellee deems to be the actual cause of the accident; namely, that the mechanical steering system was constructed of defective material not reasonably safe for the purpose for which it was intended, independent of any possibility of excessive horsepower. Testimony by a Dr. Allen Wehr, whose specialty is metallurgy, showed that *466 the steering cable was composed of resulpherized steel which was unsuitable for fatigue application in the type of stress relevant to such a system. His testimony was supported by that of two other expert witnesses who stated not only was the cable on the boat not reasonably safe for its intended use as a steering system, but that, in conclusion, the 200 horsepower engine had nothing to do with the cable breaking.
In U-Haul Co. v. White, 232 So.2d 705, 708 (Miss. 1970), this Court stated that a safety statute furnishes the standard of care when the injured party "is part of the class of persons which the statute was intended to protect and the harm suffered resulted from the type of risk covered by the statute." Expanding on U-Haul, we declared in Byrd v. McGill, 478 So.2d 302, 304, that,
"As a result of this clear violation of the boat safety statute by the appellee, the doctrine of negligence per se is applicable. This doctrine is well known to the jurisprudence of this state and provides that one who violates the provisions of the statute is per se negligent, without need for showing that the putative tort feasor maintain an actual lack of reasonable care. The statute itself is deemed a conclusive expression of the applicable standard of reasonable conduct as pronounced by legislative enactment."
However, we believe that the facts in Byrd and the applicability of the statute at issue therein are clearly distinguishable from the case sub judice. The parties to Byrd were involved in a boating accident wherein appellee failed to maintain compliance with the Federal Boat Safety Act of 1971, and regulations promulgated thereunder (as adopted by Miss. Code Ann. § 59-21-81)[1] by not furnishing the rented vehicle with life jackets, paddles and lights as required by law. We determined that the trial court had erred in refusing submission of an instruction of negligence per se, finding instead that appellant fell squarely within the class of persons sought to be protected by the above statute, and furthermore that the harm that resulted to him was of the very type sought to be prevented by the statute.
However, it would stretch the limits of this Court's collective imagination and reasonable interpretation of the portion of the statutes and regulations which we address today to extend coverage of these boating safety rules to include what size motor should be attached to DME's steering mechanism, and following appellant's argument a breach of which rules would subject the party using a boat with a larger horsepower engine than indicated on the Coast Guard capacity plate to liability for having been negligent as a matter of law.
Too, we would note that DME itself represented its steering system to be readily adaptable to high horsepower usage and quote a passage from DME's order catalog introduced into evidence:
"Det-Mar 500 Rack and Pinion Mechanical Steering" Rack and pinion mechanical steering has been acclaimed as the most efficient type available. The Det Mar 500 is designed to handle tough steering loads, still retaining sensitivity and position steering feel. Det Mar solves the problem of high horsepower application. The 500 rack and pinion features a machine cut steel alloy gear which has superior wear resistance over ordinary systems with zinc die cast racks. Tolerances are subsequently maintained longer for safer operation. (emphasis added)
By this statement, DME held out to prospective users that the use of high horsepower was contemplated and anticipated, and the system's "alleged" suitability for usage with such high horsepower was a promotional aid in its sales.
We hold that the trial judge was correct in finding that submission of the text of the *467 federal and state statutes and regulations was unnecessary and would, as stated by him, "obscure what the Court considers to be negligence in the case,". The appellee at no time objected to the admission of the statutes and regulations. The motion in limine was filed by Denson and Pepmiller, the other defendants. We find no error in the lower court's having granted this motion.

II.
We turn now to the appellant's next assignment of error by the trial court in refusing to allow appellant's witness, David Beach, to give expert testimony regarding the proximate cause of the accident. "Whether a witness ... possessed the required degree of specialized knowledge within a particular field to testify as an expert generally rests within the trial judge's sound discretion." Hooten v. State, 492 So.2d 948 (Miss. 1986). See also, Illinois Central Railroad Co. v. Benoit Gin Co., 248 So.2d 426 (Miss. 1971).
However, in Henry v. State, 484 So.2d 1012, 1015 (Miss. 1986), we set forth once again the well established rules concerning expert witnesses, stating that: "It is not necessary that one offering to testify as an expert be infallible or possess the highest degree of skill; it is sufficient if that person possesses peculiar knowledge or information regarding the relevant subject matter which is not likely to be possessed by a layman." Thus, while it is within the trial judge's sound discretion to determine whether the witness, David Beach, possessed a sufficient amount of knowledge necessary to testify to what Beach deemed the proximate cause of the accident in the case sub judice, Beach does not, on review, have to appear to be "infallible or possess(ing) the highest degree of skill."
Our inquiry is limited to whether the trial judge abused his discretion; we may not rule on whether he was "right" or "wrong" in our view. And, unless the trial court based its decision on an erroneous review of law, Bell v. City of Bay St. Louis, 467 So.2d 657 (Miss. 1985), this Court is not authorized to reverse for an abuse of discretion unless we find it was "arbitrary and clearly erroneous." Weiss v. Louisville, N.O. & T. Railway Co., 7 So. 390 (Miss. 1890).
In contemplation of this particular standard of review, we are not inclined to say the trial court was "clearly erroneous" or "abused its sound discretion" in sustaining plaintiff's and co-defendants' objections to qualification of Beach as an expert witness. Beach's attempt at demonstrating that the cause of the accident was through misuse of the boat with regard to the Coast Guard regulations sought to be introduced is unsupported by any evidence. The evidence showed only that the proximate cause of the accident was due to the breakage in the steering system arising from a "fatigue" cracking in the metal. Neither Beach's testimony nor that of any other witness established any standards issued by the Coast Guard regarding the maximum horsepower engine to be used in relation to the steering system in question.
Furthermore, the court did permit profert of Beach's testimony which, in including a line of questioning in which he responded with answers referring to the problem of application of a 200 horsepower motor on a 115 horsepower rated hull, alluded to the production and placement of abnormal stress on the steering system.
Therefore, we do not find that the trial court erred in not allowing Beach to be qualified as an expert witness.

III.

A.
Finally, we find the remaining assignments of error which deal either with the trial court's granting or with its denial of jury instructions to be without merit. We would note at the outset the general rule promulgated by this Court which dictates that instructions to the jury are to be taken collectively rather than be given individual consideration. So long as all the instructions read together adequately and properly instruct the jury on the issues, an individual instruction given to the jury will not constitute reversible error. Susan *468 Garcia v. Coast Electric Power Ass'n, 493 So.2d 380 (Miss. 1986); Miss. Farm Bureau Mutual Ins. Co. v. John W. Todd, et al, 492 So.2d 919 (Miss. 1986).
DME assigns as error the granting of plaintiff's instructions P-9, P-10 and P-11, as well as instruction No. 14, and a refusal by the court to grant its own instruction (DM-10), outlining its defense of unintended misuse of the product. (Too, we question whether plaintiff Robert McRee in the trial below is chargeable with error assigned to instruction No. 14 offered by co-defendants Denson and Pepmiller, who are not a party to this appeal. We do not believe appellant can complain of something here not attributable to his opponent, the appellee.)
P-9 reads, in pertinent part, that:
The manufacturer of a product who places said product upon the market for sale to and use by the general public has a duty to manufacture and assemble such product in a reasonably safe condition and to use component parts of a reasonably safe design and quality, and the failure to do so is negligence. Therefore if you find from a preponderance of the evidence in this case that defendant, Detroit Marine Engineering, sold the Det Mar 500 Rack and Pinion steering system on the motor boat involved in this accident in question, and if you further find from a preponderance of the evidence in this case that its steering cable end rod was defective, of inferior quality or was designed and manufactured in such a manner that under normal use it would bend, break or otherwise not withstand the pressure that was reasonably foreseeable in the course of its intended use, and if you find that such defective condition existed when the steering system was sold and that there was no substantial change in the steering system at the time of the accident in question, and if you further find that said defect or condition was the proximate cause or proximate contributing cause of the accident in question and to the injuries sustained by plaintiff therein, then it is your sworn duty to return a verdict against defendant, Detroit Marine Engineering. (emphasis added)
Instruction P-10 contains the same language objected to by DME within the instruction which illustrates that the finding of "inferior quality" in the product stands as a formative point in ascertaining negligence on the part of the manufacturer. DME's objection is grounded in the basis that liability in a products liability suit should be reached only if that product was defective in that it was unreasonably safe or that it was not necessarily safe for use as intended. Ford Motor Co. v. Matthews, 291 So.2d 169 (Miss. 1974). Appellant contends that a product may be inferior to another and still be reasonably safe.
Appellee asserts that appellant has waived his right to cite the granting of these instructions as error in that he did not object to them specifically along the grounds of his assignments of error during the trial and in addition thereto did not cite them as error in his motion for a new trial; judgment notwithstanding the verdict; or in the alternative a remittitur. Appellee cites Thames and Co. v. Eicher, 373 So.2d 1033, 1036 (Miss. 1979), in support of his case which states that, "although (an) instruction was erroneous and subject to criticism, without proper objection having been made at the trial court level, we will not reverse on such a basis."
In Cannon v. Jones, 377 So.2d 1055 (Miss. 1980), appellant cites what he deems to be a similar situation when the appellant therein objected to a particular instruction at trial court level on different grounds than what he had assigned as error on his appeal to the Supreme Court. The Court in Cannon stated that the "objection below did not focus upon the matter now used in accordance with our Supreme Court Rule 42 ... (Although) we do not approve of the language in (the instruction) as written, (on) the record as made it does not warrant reversal."
Our Rule 42 states, "no assignment of error based on the giving of an instruction to the jury will be considered on appeal unless specific objection was made to the instruction in the trial court stating the *469 particular ground or grounds for such objection."
At trial, DME objected to the granting of Instruction P-10 on the grounds that it was beyond the scope of the pleadings and that warranty is not a proper element therein. Appellant objected to P-9 on the basis that the instruction is incomplete in that it fails to encompass all elements that relate to either strict product liability or negligent design.
While we find merit in appellant's argument in that the error assigned on appeal is not so different from the form and manner in which it was objected to at the trial level, e.g., the direction taken at both stages is one which attempts to illustrate improper instruction given to a jury on the basis of how to determine liability for the parties to the action, we find this to fall under our Rule 11 which provides in part that, "No judgment shall be reversed on the ground of misdirection to the jury ... unless it shall affirmatively appear, from the whole record, that such judgment has resulted in a miscarriage of justice." The context in which "inferior quality" is used is such that no reasonable jury member would infer more than beyond what the general intent of these and other instructions given during the course of the trial were meant to imply, and thus we find only harmless error, if any, in the granting of such instructions. Further, there was an abundance of evidence that the metal in the steering mechanism was of inferior quality.

B.
The portion of plaintiff's instruction P-11 objected to reads as follows:
One who manufactures and sells a product in a defective condition not reasonably safe for the user thereof is subject to liability for physical harm proximately caused or proximately contributed to by the defective condition, if such product reaches the user without substantial change in the condition in which it was sold; and this is true even though the manufacturer of said product has exercised all possible care and was not negligent in the manufacture and sale of said product and even though the user thereof had not bought the product from or entered into any contractual relationship with the manufacturer thereof.
DME objects to this instruction on the basis that it allows the jury to make a complete determination of liability without considering DME's theory of the case, which, it alleges, was amply supported by the evidence DME alleged and sought to introduce at trial  this evidence consisting of proof that its product was misused and that such was the proximate cause of the accident.
Having previously disposed of the issue of defendant's theory of the case, we are not inclined to find error in the granting of this instruction, particularly when nothing offered at trial as to product misuse tended to prove this.

C.
Appellant cites as error the court's granting of instruction No. 14, submitted by co-defendants, which states:
[W]hen the speed of a boat is a factor in determining the proximate cause of a collision the evidence as to speed should be limited to the time of, or immediately before, the collision, and you should not consider evidence of speed prior to and remote from the collision in question; however, evidence of prior speed may be considered by you if you find (1) such evidence shows that the boat continued to be operated approximately at the same speed until the collision occurred, or (2) when the circumstances are such, because of the nearness of the prior speed to the collision in point of time and distance.
Therefore, if you consider the offered evidence of the subject boat's speed on its way to the Low Head Dam to be too remote and further that there was no evidence that the subject boat continued to be operated in the same manner, then you may disregard such evidence.
Appellant disputes the language and impact of the instruction as he alleges it once again precludes any jury consideration of *470 its defense of product misuse when the instruction limits the consideration of evidence of the speed of the boat to the time of the action, thus effectively narrowing a finding of negligence in the operation and maintenance of the boat to that day. Appellant asserts that this completely ignores DME's defense that co-defendants Denson and Pepmiller were guilty of causing the steering rod failure through the cumulative effect of longterm overpowering; and further that the instruction ignores completely the evidence presented on behalf of both the plaintiff and co-defendants that the fatigue failure was occasioned over a long period of time. In sum, appellant alleges that such an instruction effectively prohibits the jury from considering the manner in which the boat was operated.
Once again we dispose of this assignment of error, finding first that appellant did not present its defense of alleged misuse of its product, and secondly, lack of foreseeability is required and has not been shown.

D.
Appellant alleges that instruction DM-10 would have allowed the jury to return a verdict in favor of DME if the jury found that in overpowering the subject boat the steering system was misused or used as not intended; that such unintended use was the proximate cause of the accident; and that such misuse was not reasonably foreseeable by DME.
Instruction DM-10 states:
The Court instructs the jury that if you find from a preponderance of the evidence in this case that:
1. The 115 horsepower maximum capacity United States Coast Guard rated boat of Rick Denson containing a Detroit Marine steering system was used in conjunction with a 200 horsepower motor by Rick Denson and D.D. Pepmiller; and
2. That such boat and motor combination was an abnormal handling or misuse of the 115 horsepower maximum capacity United States Coast Guard rated boat of Rick Denson containing a Detroit Marine steering system and proximately resulted in a failure of the steering system on said boat from abnormal cyclic stress or abnormal vibrations resulting from such boat and motor combination; and
3. Such abnormal handling and misuse of the boat-motor combination was not reasonably foreseeable by Detroit Marine, then your verdict shall be for Detroit Marine.
This assignment of error is without merit as well: DM-10 comes very near to being a peremptory instruction speaking to co-defendants Denson's and Pepmiller's alleged mishandling of the boat, and again simply because it was owned and operated with a 200 horsepower engine. This instruction is not properly submitted to the jury in its present form. No evidence was admitted to this extent, the jury having only heard that a possible cause of the fatigue cracking in the steering mechanism on the boat was due to the defective material used in the body of the device. Again, the appellant was looking at the "Capacity Plate" and forgot to prove negligence on the part of Denson and Pepmiller. All the parties agree there was fatigue cracking, only the appellant failed in its efforts to establish a reason therefor.
And, while the trial court properly refused DM-10, appellant was not left entirely without instruction to the jury concerning negligent handling and misuse of the product. Jury Instruction DM-11 covers both the possibility of negligent act and negligent design. It reads, in pertinent part:
[I]f you find from a preponderance of the evidence in this case that:
... .
3. Injuries to Robert McRee proximately resulted from a negligent act of Detroit Marine because of negligence in the design of the mechanical steering system involved in the accident in question, or that Detroit Marine in (sic) liable to Robert McRee under strict product liability, in combination with negligence of Rick Denson and D.D. Pepmiller together in operating the *471 maximum capacity 115 horsepower United States Coast Guard rated boat of Rick Denson and accelerated, aggravated or enhanced a failure of such steering system because of abnormal stresses or forces on the steering system resulting from abnormal vibrations or cyclic stress of such boat-motor combination from operations at above-normal speeds, operations in turbulent water, or operation at above-normal speeds in turbulent or rough water, then Detroit Marine, Rick Denson and D.D. Pepmiller are all liable to Plaintiff and your verdict shall be for the Plaintiff.

IV.
We are asked on appeal as well to review the jury award of One Million Dollars to plaintiff for injuries incurred, and to determine whether this award represents such an excessive amount as to be against the overwhelming weight of the evidence and be such as to evince bias, passion and prejudice on the part of the jury. Our review has naturally led us through past jury awards in which we have been called upon to render comparisons between those decisions and the case sub judice. However, while seeking such similarities may be helpful to our overall research, we are guided (if not limited) by this Court's decision handed down in Woods v. Nichols, 416 So.2d 659 (Miss. 1982), in which we determined that each suit for personal injury must be individually decided upon its particular facts.
We are also mindful of our general rule that great deference must be given to the factfinder, and our ventures into the jury's province are greatly restricted:
As to any excessive verdict, it is said in 22 Am.Jur.2d Damages § 366, p. 473 (1965): "The damages, therefore, must be so excessive as to strike mankind, at first blush, as being beyond all measure, unreasonable, and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice, or corruption. In short, the damages must be flagrantly outrageous and extravagant, where they have no standard by which to ascertain the excess."
Biloxi Electric Co. v. Thorn, 264 So.2d 404 (Miss. 1972).
Presented to the jury was evidence that McRee suffered a myriad of injuries, including lacerations above his right eye and depressed fractures of the right side of his forehead, his right cheekbone, and his right orbit. In addition, his nasal bone had been broken. He underwent extensive surgery; first, to correct the pressure on his brain in which a small hole was drilled in his skull to alleviate the situation; and second, to rectify the damage to his facial area in which his skull fracture was elevated, his upper orbit repaired, the floor of his lower orbit replaced with a plastic insert, and his cheekbone moved and set. In all, McRee underwent a total of six operations, and these, coupled with the cost of his hospital stay, totaled almost $18,000.
Testimony by the surgeons and other doctors involved in McRee's case revealed that because of his injuries incurred, while extensive correctional surgery had been committed on his person, appellee would continue to experience "an undefinable mild blunting" of his judgment and a certain euphoric feeling at times in his day-today existence.
Further testimony showed that appellee had lost $17,000 in wages from being out of work as a truck driver for 13 months while recuperating, but has since returned to his former line of work, albeit with a different trucking line. Apparently, appellee receives the same salary now as he did before the accident, but he complains of having double vision when looking to the extreme right or left, which he believes is detrimental to his driving a truck and may in the long term affect his job as far as future promotions and/or salary raises are concerned.
We are at once struck by the simple fact that, from all of his injuries arising from the accident, McRee will continue to suffer permanent residual effects and, while he has undergone extensive cosmetic surgery in the facial area, he is permanently disfigured as a result of the damage done.
*472 Therefore, in view of appellee's prior health and permanent injury suffered, and with an eye toward the role of the jury in our judicial system, this Court cannot hold that the verdict awarding Robert McRee One Million Dollars in actual damages is excessive as to evince bias, passion and prejudice on the part of the jury so as to shock the conscience, and affirm the damages verdict accordingly.
AFFIRMED AS TO LIABILITY AND DAMAGES.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] The pertinent portion of this section reads as follows:

Every vessel shall have on board a Coast Guard approved personal flotation device for each person aboard such vessel, and during the hours of darkness, lights which comply with all federal regulations applicable to such vessels of such classification. .. . In addition to the requirements imposed by this section, all vessels shall comply with all federal regulations applicable to vessels of such classifications.