# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-00182-COA

LEATRICE SMITH AND DEBORAH SMITH                    APPELLANTS

v.

LARUE BAKER, INDIVIDUALLY AND IN HIS                    APPELLEES
PROFESSIONAL CAPACITY, LARUE
DISCOUNT DRUGS, INC., JUSTIN ESTESS,
M.D., AND BROOKHAVEN ANESTHESIA AND
PAIN MANAGEMENT ASSOCIATES, P.A.

| | |
|---|---|
| DATE OF JUDGMENT: | 02/05/2020 |
| TRIAL JUDGE: | HON. RICHARD W. McKENZIE |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | ABBY GALE ROBINSON |
| ATTORNEYS FOR APPELLEES: | JASON HOOD STRONG |
| | J. ROBERT RAMSAY |
| | THOMAS RAY JULIAN |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED - 06/08/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WILSON, P.J., GREENLEE AND McDONALD, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1.     Leatrice and Deborah Smith sued a doctor and his medical clinic and a pharmacist and his pharmacy, alleging that their negligence had caused Leatrice to become addicted to opioids. The defendants moved for summary judgment, arguing that the doctrine of judicial estoppel barred the Smiths' claims because the Smiths failed to disclose the claims in their prior bankruptcy filings. The circuit judge granted the defendants' motions, and the Smiths appealed. The Smiths' brief on appeal begins by accusing the circuit judge of bias and

misconduct. These allegations against the circuit judge are frivolous. In addition, the circuit judge did not abuse his discretion by ruling that the doctrine of judicial estoppel bars the Smiths' lawsuit. Therefore, the circuit judge also did not err by granting the defendants' motions for summary judgment. Accordingly, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. From 2013 to 2017, Leatrice was a patient of Dr. Justin Estess and his clinic, Brookhaven Anesthesia and Pain Management Associates P.A. (collectively, "Estess"). Estess prescribed certain opioids to Leatrice as part of his treatment. LaRue Discount Drugs Inc., a pharmacy owned and operated by pharmacist LaRue Baker (collectively, "LaRue"), filled a number of Leatrice's prescriptions. The Smiths allege that Leatrice became addicted to opioids and suffered serious injuries and emotional distress as a result. The Smiths further allege that Estess negligently prescribed opioids to Leatrice and that LaRue negligently continued to fill the prescriptions.

¶3. In June 2017, the Smiths, through counsel, filed a petition for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Southern District of Mississippi.[1] In July 2017, the Smiths filed sworn schedules of assets and liabilities in support of their bankruptcy petition. In their sworn schedules, the Smiths answered "No" to the question whether they had any interest in any "[c]laims against third parties, whether or not [they had] filed a lawsuit or made a demand for payment." The Smiths submitted a Chapter 13 bankruptcy plan, and the bankruptcy court confirmed their plan on November 7, 2017.

---

[1] The attorney who represented the Smiths in their bankruptcy proceeding does not represent them in this case.

¶4. Just eight days later, on November 15, 2017, an attorney for the Smiths, Abby Robinson, sent a letter to LaRue, asserting a negligence claim on behalf of the Smiths and offering to discuss settlement. The same day, the Smiths, through Robinson, also served Estess with a notice of intent to sue, alleging medical malpractice by Estess and two nurse practitioners at his clinic. By December 2017, Robinson had been in contact with LaRue's insurer and made a settlement demand of $250,000, which the insurer rejected.

¶5. In April 2018, the bankruptcy trustee filed a motion to dismiss the Smiths' bankruptcy case because the Smiths had failed to make payments required by their bankruptcy plan. The bankruptcy court granted the trustee's motion in May 2018 and entered a final judgment closing the case in August 2018. At no point during the proceeding did the Smiths disclose their claims against Estess or LaRue to the bankruptcy court.

¶6. In May 2018, the Smiths filed a second petition for Chapter 13 bankruptcy. The Smiths again failed to disclose their claims against Estess or LaRue in the sworn schedules they filed in support of their petition.

¶7. On June 20, 2018, having failed to obtain an out-of-court settlement, the Smiths filed suit against LaRue in the Lincoln County Circuit Court. On September 20, 2018, the Smiths filed an amended schedule in support of their second bankruptcy petition in which they finally disclosed their by-then-pending lawsuit against LaRue.

¶8. In May 2019, the Smiths filed an amended complaint naming both Estess and LaRue as defendants. In both their complaint and amended complaint, the Smiths alleged that LaRue had negligently dispensed opioids to Leatrice and had caused Leatrice's addiction and

3

injuries. In their amended complaint, the Smiths alleged that Estess had negligently prescribed opioids to Leatrice and had caused Leatrice's addiction and injuries.

¶9. LaRue and Estess later became aware of the Smiths' first bankruptcy case and filed motions for summary judgment. LaRue and Estess argued that the doctrine of judicial estoppel barred the Smiths' claims because the Smiths failed to disclose the claims in their first bankruptcy case. In response to the defendants' motions, the Smiths submitted the amended schedule from their second case in which they had finally disclosed their claims to the bankruptcy court. The Smiths argued that their disclosure in the second case defeated the defendants' judicial estoppel argument. Following a hearing, the circuit court entered an opinion and order finding that the Smiths' claims were barred by the doctrine of judicial estoppel and that the defendants were entitled to summary judgment.

¶10. The Smiths subsequently filed a notice of appeal. The Smiths' brief on appeal primarily argues that the circuit judge was biased and violated the Code of Judicial Conduct. As we explain below, these allegations are frivolous and violate the Rules of Professional Conduct. Eventually, the Smiths' brief turns to the actual issues in the case. However, we conclude that the circuit judge did not abuse his discretion by finding that the Smiths' claims are barred by the doctrine of judicial estoppel. Accordingly, the circuit judge also did not err by granting the defendants' motions for summary judgment.

**ANALYSIS**

I. **Robinson's allegations of misconduct by the circuit judge are frivolous.**

¶11. The Smiths' first three issues on appeal consist of allegations that the circuit judge

4

was biased and violated all five Canons of the Code of Judicial Conduct. We address these allegations in turn and find each to be frivolous.

¶12. First, the Smiths' attorney (Abby Robinson) argues that the circuit judge engaged in "conduct prejudicial to the administration of justice" by adopting a proposed opinion and order drafted by LaRue's attorney. Specifically, Robinson "contends that it appears that the lower court judge did not understand the law and facts as presented, so the easiest thing to do, was simply to accept verbatim defense counsel, attorney Jason Strong's order and judgment, as though attorney Jason Strong was selected to preside as judge in the matter." There is no basis for the accusations that the judge did not understand the law or the facts or engaged in any other misconduct. At the conclusion of the summary judgment hearing, the judge took the motions under advisement, stating that he needed additional time to consider the arguments and materials that had been presented. The judge subsequently concluded that the motions should be granted and requested a proposed opinion and order, which counsel for LaRue provided to the judge by email with a copy to Robinson. There is nothing unusual or improper about the judge's request for or use of a proposed order. *See, e.g.*, *Kuhn v. High*, 302 So. 3d 630, 637-38 (¶¶20-21) (Miss. 2020) (holding that the trial judge did not err by "request[ing] that the winning party draft a proposed order" or by adopting much of the proposed order); *Watson Labs. Inc. v. State*, 241 So. 3d 573, 583 (¶17) (Miss. 2018) (holding that a trial judge's decision to adopt a party's proposed findings is not subject to any sort of "heightened scrutiny"); *Carlson v. Brabham*, 199 So. 3d 735, 739, 745 (¶¶8, 12, 43) (Miss. Ct. App. 2016) (affirming a trial judge's decision that "adopted [the defendant's] findings

of fact and conclusions of law in toto").

¶13. Next, Robinson alleges that the circuit judge violated his obligation to perform his duties impartially and diligently because the judge stated, "I've read, I think, most of [what had been filed in the case]. . . . I won't tell you I've read all of it, but I think I read most of it." Robinson argues that these comments show that the judge failed to read all relevant parts of the record before ruling. However, they indicate no such thing. A judge does not violate the Code of Judicial Conduct just because he has not read every word of every document on file prior to a hearing. It is evident from the transcript of the hearing that the judge was prepared and familiar with the issues and the record in this case. Moreover, after listening to the arguments on the defendants' motions for summary judgment, the judge stated that he "obviously [was not] going to make a ruling from the bench . . . because as much stuff as [he] had to consider . . . [he] want[ed] to spend a great deal of time going over it and arriving at a decision." Put simply, there is no basis for Robinson's allegation that the judge failed to consider the record or her arguments.

¶14. Finally, Robinson makes a particularly frivolous claim that the judge demonstrated bias in favor of LaRue and conveyed the impression that LaRue's attorney was "in a special position ***to influence the judge***[]." (Emphasis in the original). Robinson further asserts: "Unfortunate for Appellants', their counsel was not a lawyer from a large Mississippi Law Firm, nor was Appellants' counsel a friend of whom the honorable judge Richard McKenzie knew in the way the judge obviously knew Defendant's counsel attorney Jason Strong." (Capitalization and punctuation in the original). She even claims that LaRue's attorney was

6

"**given a pass by the court** to act as though [he] and the honorable judge . . . had an improper relationship." (Emphasis in the original).  Robinson also specifically alleges that the judge allowed LaRue's attorney "to bring in a document that could influence or sway the court's decision in the case."

¶15.   However, there is absolutely no evidence or appearance of any "improper relationship" between the judge and the attorney, and the relevant portion of the hearing transcript makes clear that Robinson's allegations are baseless:

THE COURT:       Just one moment.  I can't find what I'm looking for.

MR. STRONG:      Judge, if it helps you any, my paralegal put together a catalog, if you will, that has all motions and all responses and all rebuttals if that will help you.

THE COURT:       That's what's so great about paralegals.

MR. STRONG:      I know.  I know.

THE COURT:       They do all the work then I get it offered to me.

MR. STRONG:      Would you like me to give that to you?

THE COURT:       I certainly would appreciate it.

MR. STRONG:      So the way she did this is, Number 1 is going to my client's motion for summary judgement [and exhibits].

. . . .

And Number 2 is the plaintiff's response and [exhibits].

. . . .

And then 3 is the rebuttal.

. . . .

7

MS. ROBINSON:    Thank you, Judge.  Defense counsel just put something in the Court's possession that we haven't seen.  Can we see it, Judge?

THE COURT:    Let her look.

MS. ROBINSON:    Thank you.  And, Judge, if defense counsel has prepared a document book for the Court he's going to really need to -- do you have an extra one?

MR. STRONG:    I don't.

MS. ROBINSON:    It's going to be tough for us to go along with whatever he's got for the Court without having it in our hands as well.

THE COURT:    I'm certain it's everything that's already -- he's not going to give something that hasn't been filed.  And believe it or not, I've read, I think, most of it.

MS. ROBINSON:    Yes, Your Honor.

THE COURT:    I won't tell you I read all of it, but I think I read most of it.  But if at any point in time you need to take some time to get caught up in your pleadings, we'll certainly let you do so.

MS. ROBINSON:    Thank you, Your Honor.  And Your Honor, you're going to let us know if there's a cat in that book we haven't seen.  Please, Your Honor.

THE COURT:    Oh, I'll do it.

MS. ROBINSON:    Thank you.

MR. STRONG:    Your Honor, if I may.  Jason Strong for Larue Discount Drugs and Larue Baker.  What I handed you was my client's motion with the exhibits, the plaintiff's response to that motion and our rebuttal with the exhibits.  And there's nothing else in that book besides an index that catalogs those.

8

¶16. Thus, LaRue's attorney simply provided the judge with a copy of the motion that was about to be heard, the Smiths' response, LaRue's rebuttal, and all related exhibits. There is nothing improper about a lawyer offering, or a judge accepting, a copy of relevant filings during a motions hearing. Robinson complains that defense counsel did not bring a copy for her, but Robinson presumably had her own copy of those same documents. If she came to the hearing unprepared, that is on her, not defense counsel.

¶17. In summary, Robinson's various allegations of misconduct by the circuit judge are patently frivolous. They also violate the Rules of Professional Conduct. Miss. Rules of Pro. Conduct 8.2(a) ("A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge . . . ."). Such baseless allegations are a disservice to Robinson's clients and are of no assistance to this Court in resolving the true issues on appeal. As another court recently observed, "There is a difference between zealous representation—which is required—and acerbic remarks or unfounded claims of bias and prejudice. The latter do not serve the client well because inflamed rhetoric is no substitute for an argument grounded in a correct understanding of the law. No court is persuaded by bluster." *Norman v. GEICO Ins.*, No. 3:20-CV-418-DPJ-FKB, 2020 WL 5096522, at *6 n.6 (S.D. Miss. Aug. 28, 2020).

## II. The circuit judge did not abuse his discretion by finding that the Smiths' claims are barred by the doctrine of judicial estoppel.

¶18. We review an order granting summary judgment de novo. *Adams v. Graceland Care Ctr. of Oxford LLC*, 208 So. 3d 575, 579 (¶9) (Miss. 2017). However, we review "a trial court's application of judicial estoppel" only for an "abuse of discretion." *Id.* Therefore, if

9

the trial court did not abuse its discretion by determining that judicial estoppel bars a plaintiff's claims, then "it necessarily follows that [the trial court's] grant of summary judgment was proper." *Rogers v. Gulfside Casino P'ship*, 206 So. 3d 1274, 1279 (¶9) (Miss. Ct. App. 2016); *accord Adams*, 208 So. 3d at 582 (¶23). Because our review "is limited to whether the trial judge abused his discretion[,] we may not rule on whether he was 'right' or 'wrong' in our view. And, unless the trial court based its decision on an erroneous review of law, this Court is not authorized to reverse for an abuse of discretion unless we find it was 'arbitrary and clearly erroneous.'" *Adams*, 208 So. 3d at 580 (¶13) (ellipsis omitted) (quoting *Detroit Marine Eng'g v. McRee*, 510 So. 2d 462, 467 (Miss. 1987)).

¶19. "Judicial estoppel operates to protect the integrity of the judicial system." *Id.* at (¶14). Judicial estoppel has only "three elements": "a party will be judicially estopped from taking a subsequent position if (1) the position is inconsistent with one previously taken during litigation, (2) a court accepted the previous position, and (3) the party did not inadvertently take the inconsistent positions." *Id.* (brackets omitted) (quoting *Clark v. Neese*, 131 So. 3d 556, 560 (¶16) (Miss. 2013)). "Judicial estoppel is particularly appropriate where . . . a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset." *Id.* at 582 (¶21) (quoting *Jethroe v. Omnova Sols. Inc.*, 412 F.3d 598, 600 (5th Cir. 2005)).

¶20. The United States Bankruptcy Code requires a bankruptcy debtor to file a "schedule of assets and liabilities." 11 U.S.C. § 521(a)(1) (2018). "[T]he integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets." *In re Coastal*

*Plains Inc.*, 179 F.3d 197, 208 (5th Cir. 1999) (emphasis omitted) (quoting *Rosenshein v. Kleban*, 918 F. Supp. 98, 104 (S.D.N.Y. 1996)). "It goes without saying that the Bankruptcy Code and Rules impose upon debtors an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims*." *Id.* at 207-08. "The disclosure requirement pertains to potential causes of action as well." *Love v. Tyson Foods Inc.*, 677 F.3d 258, 261 (5th Cir. 2012). "The debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information prior to confirmation to suggest that it may have a possible cause of action, then that is a 'known' cause of action such that it must be disclosed." *Coastal Plains*, 179 F.3d at 208 (ellipsis and other quotation marks omitted). Because a debtor has a duty to disclose all potential causes of action, his "omission of [a] personal injury claim from [his] mandatory bankruptcy filings is tantamount to a representation that no such claim existed." *In re Superior Crewboats Inc.*, 374 F.3d 330, 335 (5th Cir. 2004). Moreover, the debtor has a "continuing duty to update her bankruptcy schedules" throughout the bankruptcy proceeding. *Adams*, 208 So. 3d at 580 (¶¶15-16). "Further, a debtor's non-disclosure [of a potential claim] is inadvertent only when, in general, the debtor either lacks knowledge of the undisclosed claim or has no motive for [its] concealment." *Id.* at (¶14) (quotation marks and brackets omitted).

¶21.     The circuit judge did not abuse his discretion by finding that the first two elements of judicial estoppel are present in this case. The Smiths clearly failed to disclose their potential claims against Estess and LaRue during their first bankruptcy case, which was pending from June 2017 until August 2018. The Smiths were aware of their potential claims by November

2017, at the very latest. As discussed above, on November 15, 2017—just eight days after the bankruptcy court confirmed the Smiths' bankruptcy plan—their attorney sent a notice of claim to Estess and a letter to LaRue asserting a "claim of negligence." In addition, in December 2017, the Smiths' attorney offered to settle their claim against LaRue for $250,000. Nonetheless—and despite their mandatory and continuing duty of disclosure—the Smiths never disclosed their claims to the bankruptcy court during their first bankruptcy case. They also failed to disclose their claims in their original filings in their second bankruptcy case. These omissions were tantamount to representations to the bankruptcy court that no such claims existed. *In re Superior Crewboats Inc.*, 374 F.3d at 335. In the present case, in contrast, the Smiths allege that they have viable claims against Estess and LaRue. The "inconsistency" between the Smiths' position in the bankruptcy court and their position in this case "readily satisfies the first prong of the judicial estoppel inquiry." *Id.*; *accord Adams*, 208 So. 3d at 580 (¶16); *Rogers*, 206 So. 3d at 1279 (¶10). Moreover, the second prong of the judicial estoppel inquiry is also satisfied because the bankruptcy court accepted the Smiths' previous position (that they had no potential claims) when it confirmed their bankruptcy plan in their first bankruptcy case.[2]

¶22. The circuit judge also did not abuse his discretion by finding that the third element of

---

[2] *Jackson v. Harris*, 303 So. 3d 454, 459 (¶16) & nn.6-7 (Miss. Ct. App. 2020) (holding that the bankruptcy court accepted the debtor's previous position when it confirmed his bankruptcy plan, although the bankruptcy court later dismissed the case because the debtor failed to make required payments); *see also Jethroe*, 412 F.3d at 599-600 (same); *Superior Crewboats*, 374 F.3d at 335 ("Adoption does not require a formal judgment; rather, it only requires that the first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition." (quotation marks omitted)).

judicial estoppel was present. As stated above, "a debtor's non-disclosure [of a potential claim] is inadvertent only when, in general, the debtor either lacks knowledge of the undisclosed claim or has no motive for [its] concealment." *Adams*, 208 So. 3d at 580 (¶14). Here, the Smiths had knowledge of their potential claim during their first bankruptcy case. Indeed, as discussed above, the Smiths' attorney sent the defendants a notice of claim and a letter asserting the Smiths' claim just eight days after the bankruptcy court confirmed the Smiths' bankruptcy plan. In addition, it is "obvious" that the Smiths "had a motive to conceal [their] claim[s]": to avoid having to share any recovery with their creditors. *Id.* at 581 (¶16) (stating that the "motivation sub-element is almost always met if a debtor fails to disclose a claim or possible claim to the bankruptcy court" and that "[m]otivation in this context is self-evident because of potential financial benefit resulting from the nondisclosure" (quoting *Love*, 677 F.3d at 262)).[3]

¶23. On appeal, the Smiths argue that judicial estoppel should not bar their claims (1) because the claims did not exist when they filed their first bankruptcy petition and (2) because they disclosed the existence of their lawsuit in an amended schedule during their second bankruptcy case. These arguments are without merit.

¶24. The Smiths' first argument ignores that the Bankruptcy Code required them to disclose not only pending lawsuits but also any "potential causes of action." *Love*, 677 F.3d at 261. "[I]f the debtor has enough information prior to confirmation to suggest that it *may*

---

[3] *Accord Rogers*, 206 So. 3d at 1280 (¶12) ("The debtor's motive not to disclose her claim is the same as her motive not to disclose any other asset. If the debtor does not disclose her claim, she can keep the net proceeds of any settlement or judgment rather than pay her debts to creditors who are not repaid in full under the terms of her bankruptcy plan.").

have a possible cause of action, then that is a 'known' cause of action such that it must be disclosed." *Coastal Plains*, 179 F.3d at 208 (emphasis added) (ellipsis and other quotation marks omitted). The Smiths' argument also ignores that their duty of disclosure was continuing and required them to disclose claims of which they became aware at any time during their bankruptcy. *Adams*, 208 So. 3d at 580 (¶¶15-16). The Smiths' attorney asserted their claims in correspondence to the defendants only eight days after the bankruptcy court confirmed the Smiths' bankruptcy plan. Clearly, the Smiths were by then aware of potential causes of action against the defendants. Yet, the Smiths never disclosed their claims during the first bankruptcy case. This violated their duty of disclosure to the bankruptcy court.

¶25. With respect to the Smiths' second argument, we conclude that the circuit judge did not abuse his discretion by finding the Smiths' belated disclosure of their claims came too late. The circuit judge concluded,

> [T]he fact that the Smiths later—in the subsequent bankruptcy case and after this lawsuit was commenced—disclosed their claims does not negate a finding of judicial estoppel. . . . [B]y the time the Smiths disclosed their claims during the subsequent bankruptcy case, they had been unsuccessful in settling them privately and out-of-court and had to resort to filing a lawsuit to pursue them further. The law disfavors this type of conduct which would lead to bankruptcy debtors only disclosing claims once their omission has been discovered and challenged by an adversary.

The record supports this inference. *See Adams*, 208 So. 3d at 582 (¶20) (explaining that a court may draw reasonable inferences regarding a debtor's motivation from circumstantial evidence). The record indicates that the Smiths pursued settlement with the defendants for approximately seven months from November 2017 to June 2018 before they filed suit. They then waited another three months before they finally disclosed their claims to the bankruptcy

14

court in an amended schedule in their second bankruptcy case. The circuit judge did not abuse his discretion by inferring that the Smiths were attempting to pursue a private settlement and avoid disclosure to the bankruptcy court.

¶26. In summary, the circuit judge identified the correct legal principles governing the doctrine of judicial estoppel, and his application of those principles was not "arbitrary" or "clearly erroneous." *Adams*, 208 So. 3d at 580 (¶13) (quoting *Detroit Marine Eng'g*, 510 So. 2d at 467). Therefore, the judge did not abuse his discretion, and we are bound to affirm his ruling that judicial estoppel bars the Smiths' claims. *Id.* That being the case, it necessarily follows that the judge did not err by granting summary judgment. *Id.* at 582 (¶23); *Rogers*, 206 So. 3d at 1279 (¶9).

## CONCLUSION

¶27. Robinson's accusations of bias and misconduct on the part of the circuit judge are patently frivolous and improper. In addition, the circuit judge did not abuse his discretion by finding that the Smiths' claims are barred by judicial estoppel, and he properly granted the defendants' motions for summary judgment.

¶28. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**

15